(No. 14197.—Judgment affirmed.)

THE PEOPLE *ex rel.* Fred Salm, Jr., County Collector, Appellee, *vs.* ANNA CREAR *et al.* Appellants.

*Opinion filed December 22, 1921.*

1. TAXES—*when school tax levy may be made for building purposes although no building has been erected.* Although a board of education cannot levy a tax for building purposes to accumulate a fund to build a school house they have not yet determined to build, yet the building need not be under construction when the levy is made, and a levy is valid where the school house site has been selected by vote and the board authorized to purchase it and erect a building which the board has decided to erect; and the fact that litigation has held up the issuance of bonds does not render the levy void, especially where the board is obliged to provide rooms for the school until the new building is completed.

2. SAME—*taxing authorities have power to make levies to meet obligations when they become due.* It is not necessary for taxing authorities to wait until the money is actually needed for paying outstanding obligations before taxes may be levied, but they have the right to, and should, anticipate as nearly as they can the amount of money necessary to be raised to meet obligations when they become due.

3. SAME—*when school board may make levy for building purposes in addition to amount of bond issue.* Where the board of education in a community consolidated school district is not limited in its expenditure for the erection of a school house by the wording of the resolution or by the proposition voted upon to authorize a bond issue, and where in its judgment the amount of the bonds authorized will not meet the cost of the building required, a levy for building purposes, within legal limitations, to make up the difference is valid, as the board is not required to submit to the voters the question of the actual cost of the building.

4. SCHOOLS—*school board may exercise its discretion if no limitation is placed on character and cost of proposed building.* Where

no limitation is placed on a school board in the matter of erecting a new school building, the character of the building proper to answer the demands of the district, and also the amount to be devoted to that purpose, are committed to the discretion of the board, subject only to the limitation in the statute as to the power of the board to obtain the means wherewith to construct the building.

APPEAL from the County Court of Hancock county; the Hon. WARREN H. ORR, Judge, presiding.

SCOFIELD, CALIFF & BELL, and HARTZELL, CAVANAGH, MARTIN & HARTZELL, for appellants.

LEE SIEBENBORN, State's Attorney, (O'HARRAS, WOOD & WALKER, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a judgment of the county court of Hancock county overruling objections of appellants to taxes levied by Community Consolidated School District No. 305, rendering judgment therefor and entering an order of sale against the property of appellants.

Community Consolidated School District No. 305 comprises the territory formerly embraced within common school districts Nos. 222, 223, 224 and 225 of Hancock county. The village of West Point, with a population of about 300, is located in what was formerly district No. 225. At the time of the consolidation there were school houses in all these districts except No. 225, and these buildings are still standing. In the winter of 1919 the school house in district No. 225 burned and the village school has since been maintained in rented rooms. The consolidation was effected in the spring of 1920. Pursuant to a petition duly filed with the board of education for the consolidated district, the board on June 21, 1920, passed a resolution calling a special election to locate a school house site and to authorize the board of education to purchase said site and

to build a school house thereon and to issue bonds of the community consolidated school district to the amount of $32,000. The election was held Saturday, July 3, 1920, and all of said propositions received the approval of the voters. At the meeting of the board of education held the following Monday the board decided to purchase the building site, to issue the bonds and to build the school house. The secretary was directed to consult an architect and have plans prepared for the new building. July 31, 1920, the board of education levied $6400 for educational purposes and $6400 for building purposes. March 21, 1921, an architect appeared before the board pursuant to its invitation, and he was employed to prepare plans for the new school building and was directed to advertise for bids for the erection of the building. May 9, 1921, an offer was made to purchase the bonds at par, and the board accepted the offer. Ten days later the architect and a number of building contractors met with the board and submitted bids. These bids were opened but the contract was not let. July 14, 1920, certain objectors filed a bill seeking to enjoin the issuance of the bonds and the purchase of the school house site and the erection of the school building. In October, 1920, certain objectors filed a petition in the circuit court of Hancock county for leave to file an information in the nature of *quo warranto* for the purpose of testing the legality of the organization of said district. Both of these proceedings are still pending. This litigation has prevented the sale of the bonds and the erection of the new school building. The school treasurer had in his hands about $9000 belonging to the four districts which now comprise the community consolidated school district, but he refused to pay out this money on the orders of the board of education of the community consolidated school district until the legality of the organization had been determined. Of this $9000, $5000 was received as insurance on the West Point school building when it burned.

It is first contended by the objectors that the $6400 levied for building purposes was unauthorized because no building was in process of construction and because the board of education was restricted to the $32,000 bond issue for the building of the new school house. In support of the first reason they cite *Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. People,* 208 Ill. 9, and insist that it is decisive of the question. In that case it was shown that the intention of the board of directors was to use the fund levied for building purposes to erect a school house, the erection of which the board then had in contemplation but had not fully agreed upon. In discussing this point this court said: "We think it clear the board of directors of a school district cannot levy a tax for building purposes with a view to accumulating a fund, to be used some time in the future, with which to build a school house, the erection of which they have in contemplation but which they have not decided to build at the time the tax levy is made, and which has an existence only in the minds of the members of the board of directors at the time of the tax levy." This is undoubtedly the law, but it does not follow that the building must actually be in the process of erection at the time the levy is made. In the case at bar the voters had located a building site and had authorized the board to purchase the site and erect a building. The board had instructed its secretary to consult an architect and had definitely determined to erect the building. Following the levy plans were prepared and bids advertised for and received. It was the duty of the board of education to proceed with the erection of the building as far as it could with safety, in view of the pending litigation. In order to have money on hand with which to proceed with the erection of the building in 1921, it was necessary for the board to make its levy in the summer of 1920. It had the right in July, 1920, the time when this levy was made, to assume that the pending litigation would be concluded within the year

and to prepare to proceed with the sale of the bonds and the erection of the building if the litigation were decided in favor of the district. As far as the board was able to determine at the time this levy was made, the bonds would be issued and interest would be due on them July 1, 1921, and January 1, 1922. In order to have the money on hand to meet these interest obligations the levy had to be made in 1920. The levy was valid when it was made, and the fact that the litigation has held up the issuance of the bonds does not render the levy void but simply postpones the use of the fund. It is not necessary for taxing authorities to wait until the money is actually needed for paying outstanding obligations before taxes may be levied. They have the right to and should anticipate, as nearly as they can, the amount of money necessary to be raised to meet the costs of operating the political subdivision for which they are the taxing authorities and to arrange to have on hand sufficient funds to meet the obligations when they become due. (*People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33; *People* v. *Illinois Central Railroad Co.* 266 id. 126; *People* v. *Toledo, St. Louis and Western Railroad Co.* 267 id. 142.) It was also necessary for the board to provide rooms in which school could be conducted until the new building was completed. The objectors have not shown that the district had on hand available funds to meet these obligations when they fell due, so to the extent of these obligations the levy was unquestionably valid.

The resolution passed by the board of education calling the special election found and determined that the amount necessary to purchase the site and build the school house would be not less than $32,000 and asked the voters to authorize the board to issue this amount of bonds. Appellants contend that this limited the total expenditure in the matter of constructing the new school house to the amount of bonds authorized to be issued. Neither the notice of the election nor the ballot in any way suggested that

the $32,000 in bonds authorized to be issued was to represent the total cost of the new building to be erected. Appellants rely on the language used in *People* v. *Chicago and Northwestern Railway Co.* 186 Ill. 139. In that case the voters of the district had authorized a bond issue to build a new school house. The voters at the election whereby they determined to build the school house did not express by their vote a limit of expenditures for that purpose, nor was any such expression of the will of the voters involved in the election afterwards held authorizing the issue of the bonds of the district. Where no limitation is placed on the board, the character of the building proper to answer the demands of the district, and also the amount to be devoted to that purpose, are committed to the judgment and discretion of the board, subject only to the limitation found in the statute as to the power of a board to obtain the means wherewith to construct the building. In that case the board levied $8000 for building purposes to supplement the bond issue, and this court held the levy valid. In passing on the point it was said: "If the call for this election had been so framed as to limit the total expenditures in the matter of constructing a school house to the amount of the aggregate of the bonds authorized to be issued, a different question as to the validity of the levy of an additional amount for building purposes might be presented." Conceding that a different question might be presented if that were the situation, we do not consider that the board in the instant case was limited in its expenditure for the erection of the new building by anything that was said in the resolution calling the election. In the first place, it does not appear that any of the voters besides the members of the board knew what was said in this resolution; and in the second place, the resolution does not say that the building is to cost no more than $32,000. What it says is, that the building will cost not less than $32,000. The board was not required to submit to the voters the cost of the

building to be erected, and if in its judgment the amount of the bonds authorized to be issued was not sufficient to meet the cost of the building required, a levy for building purposes to make up the difference was valid. (*St. Louis, Alton and Terre Haute Railroad Co.* v. *People,* 224 Ill. 155; *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 230 id. 61.) The levy for building purposes was a valid levy and the court properly overruled the objections.

It is next urged that the tax for educational purposes is void for the reason that the levy is far in excess of the amount necessary to maintain and operate the school. This argument is based on the ground that the four districts comprising the consolidated district levied for educational purposes the sum of $4625 in 1919, whereas the consolidated district in 1920 levied for educational purposes the sum of $6400. There is no showing made that the common school districts did not have on hand moneys to supplement the levy made in 1919, nor do the objectors take into consideration the increased cost of maintaining and operating schools. The salaries actually paid the teachers for the term amounted to $7535. They contend that the record shows that there was in the hands of the township treasurer to the credit of the four districts several thousand dollars which could have been used by the consolidated district, but they do not show that this money was available for educational purposes, nor do they show that the treasurer would have recognized warrants issued against this fund by the consolidated district. The levy for educational purposes was at a rate less than one per cent, and we see no reason to hold that the board of education abused its discretion in levying this amount.

The judgment of the county court is affirmed.

*Judgment affirmed.*