518

(No. 21893.—

THE PEOPLE *ex rel.* Edwin M. Schaefer, County Collector, Plaintiff in Error, *vs.* THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, Defendant in Error.

*Opinion filed October 21, 1933.*

FARTHING, J., took no part.

LOUIS P. ZERWECK, (H. GRADY VIEN, F. A. GARESCHE, and F. J. TECKLENBERG, of counsel,) for plaintiff in error.

POPE & DRIEMEYER, (W. J. STEVENSON, of counsel,) for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

The New York, Chicago and St. Louis Railroad Company, defendant in error, filed objections in the county court of St. Clair county to the application of the county collector for judgment against the company's property for unpaid taxes. The court sustained objections to three items. A writ of error has been prosecuted to review the court's action in that regard.

Two of the items objected to relate to the county tax included in the levy made in 1931, and the other item involves a tax levied in 1931 by the East Side Levy and Sanitary District. The items of county tax complained of are listed in the certificate of levy under the heading, "For maintenance of the county home and county hospital, to be applied as follows:" The items are: "For salaries of the

superintendent, matron, employees and nurse, $19,368; for the general repairs and improvements of buildings, $4000; for food and supplies for the inmates and for the ordinary expenses incidental to general maintenance, $40,000." Besides the itemized levy made for maintenance of the county home and county hospital there is an item, "For general support of the paupers of the county outside of the county home, $35,000." The court held the $35,000 item and the $40,000 item invalid.

The objection to the $35,000 item was properly sustained, because counties under township organization having a population of less than 500,000 have no power to levy a tax for the support of paupers outside of the county home. Since the amendment of 1931 to section 15 of the Paupers act, counties of the class above mentioned, except as otherwise provided by law, have been relieved of the obligation to support poor and indigent persons resident of the various townships situated therein. (*People* v. *Alton Railroad Co.* 352 Ill. 297.) There was no legal basis for a levy for support of paupers outside the county home.

The $40,000 item was objected to on two grounds. The first was, that under the above mentioned statute the county has no authority to levy taxes for the ordinary expenses incidental to the general maintenance of a poorfarm, or, in fact, to levy taxes for pauper purposes to any extent. This contention was decided to be untenable in *People* v. *Alton Railroad Co. supra,* and *People* v. *Franklin,* 352 Ill. 528. The second ground of objection to said item is that the levy is for several purposes, and since there is no way to ascertain the exact amount intended to be levied and used for each purpose the levy as to the entire item is invalid. The right of a tax-payer to have stated separately what are the purposes for which public money is appropriated is definitely established, and a levy which is not sufficiently definite to apprise him of the

purpose for which the money is to be expended is invalid; (*Siegel* v. *City of Belleville*, 349 Ill. 240; *People* v. *Bowman*, 253 id. 234; *People* v. *Cairo, Vincennes and Chicago Railway Co.* 237 id. 312;) but it is equally well settled that it is not necessary to specify each particular item of expense for which the levy is made. A single general purpose is sufficient to include every appropriate expenditure required for the purpose although there may be many items. This is particularly true where it is difficult to determine in advance the exact amount of the several items. The statute must be given a practical and common sense construction. *People* v. *Bowman, supra.*

The levy made for maintenance of the county home and county hospital was divided into three items, and the purpose of each was stated with such particularity that no tax-payer could fail to understand the intended use of the money. The first item covers salaries of officers and employees. The second is for the expense of general repairs and improvements of buildings. The third is for food and supplies for the inmates and for ordinary expenses incidental to general maintenance. It is urged that a levy for food and supplies for inmates has a separate and distinct purpose from a levy for ordinary expenses incidental to general maintenance. When the three items are considered together there appears no basis for such an objection. Food is necessary to the general maintenance of the inmates and of the county home. So are supplies, such as medicine, bedding, soap, and many other articles. To require a more particular itemization of expenses connected with furnishing food, supplies and other articles of general maintenance would be to go beyond the reasonable and practical rule heretofore recognized by this court. An item for repairs, care, support and maintenance of a court house was held to be sufficiently definite in *People* v. *Chicago, Burlington and Quincy Railroad Co.* 266 Ill. 196. There is no valid objection to levying a gross sum for several purposes

which are embraced within some general designation giving the necessary information to the tax-payer. *People* v. *Illinois Central Railroad Co.* 271 Ill. 236; *People* v. *Chicago, Burlington and Quincy Railroad Co.* 306 id. 529.

Upon the hearing it was contended that a portion of the $40,000 item was intended for the payment of pauper claims which had been previously allowed but which remained unpaid. We cannot be concerned with any concealed or undisclosed purpose for the levy. The actual purpose is to be determined from the language employed in making the levy. In this instance the language is sufficiently clear and definite. We think the objection to such item should have been overruled.

The objection to the levy made by the East Side Levee and Sanitary District is that there was already a large amount of money in the treasury and that the levy of $292,000 was unreasonable, unnecessary and an abuse of the discretionary powers vested in the trustees of the district. At the time the tax levy was made, July 23, 1931, the treasurer had on hand $631,465.72. He afterwards received from taxes collected that year $326,919.53, making a total of $958,385.25. The average yearly expenses of the district, not including interest on bonded indebtedness, for a period of five years preceding the tax levy in question, was $313,036.56. At the beginning of the year 1931 the district had a bonded indebtedness of $500,000, maturing as follows: $200,000 on June 1, 1938, $100,000 on June 1, 1939, and $200,000 on December 1, 1940. It had no other outstanding indebtedness. Out of the surplus on hand the district retired $220,000 of bonds. At the time the levy was made the district was under no contract calling for the expenditure of any considerable amount of money.

It is urged that the district has been long contemplating a diversion of Cahokia creek or the installation of a pumping plant as a means of internal drainage, and for that reason it is prudent to create a surplus of funds. The estimated

cost of such additional work is approximately $1,000,000, and it is said that the plan for doing the work is likely to be changed. If it is changed the estimated cost will be $1,900,000. An ordinance contemplating the improvement was passed in 1915, but its provisions have never been availed of and no contract has ever been entered into contemplating the construction. About the beginning of the year 1932 the district let a contract for the building of a bridge to cost $44,500. A contract for revetment to cost about $58,000 was let the same year. Two other contracts were let totaling $152,911. The expenditures contemplated by these contracts were in no sense a 1931 expense.

It is urged that the district is justified in amassing a large surplus so that it may pay off the bonded indebtedness when due. No sinking fund was provided for the payment of the bonded indebtedness of the district although it is practicable and legal to provide one. The tax-payer has the right to know that the money he pays for such purpose is to be segregated and used for that purpose alone. The district is not permitted to accumulate a large surplus to be used at some indefinite time for a purpose which has not been determined upon. Taxing authorities should anticipate as nearly as they can the amount of money necessary for operating their political subdivisions and arrange to have funds ready to meet the obligations when due. (*People* v. *Crear*, 300 Ill. 611.) While the question of the amount necessary to be raised is committed to their reasonable discretion, they are not authorized to make levies to accumulate a fund for some project to be developed at some uncertain future time. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *People*, 208 Ill. 9; *Mathews* v. *City of Chicago*, 342 id. 120; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 id. 33; *People* v. *Illinois Central Railroad Co.* 266 id. 126; *People* v. *Sandberg Co.* 277 id. 567; *People* v. *Millard*, 307 id. 556.) Courts will not interfere with the exercise of sound business judgment

on the part of taxing authorities except to prevent abuse of discretion. The burden is upon the objector to show an abuse but it is not necessary to show actual fraud. In levying taxes there is but one thing to be considered by the levying officers—*i. e.,* the matter of raising the amount necessary to meet the requirements of expenditure. The amount of money on hand and in the process of collection should be considered. (*People* v. *Chicago and Alton Railroad Co.* 324 Ill. 179.) The unnecessary accumulation of money in the public treasury is unjust to the people because for a considerable period it deprives them of the use of the money taken from them, and it is impolitic, as it may tempt those having the custody of funds to use them improperly. It is against the policy of the law to raise taxes faster than they are likely to be needed. (*People* v. *Chicago and Northwestern Railway Co.* 331 Ill. 544.) The proof in this case makes it clear that even after the retirement of $220,000 of bonds and charging all sums paid out on the 1932 contracts against the funds on hand in 1931 there was still a surplus far beyond the ordinary requirements for the year. With available resources of nearly $1,000,000, with no debt except bonded indebtedness, none of which was due before 1938, and with no construction work being done during the current year, the levy was palpably unnecessary, and the trial court correctly sustained the objection thereto.

The order of the county court of St. Clair county is affirmed except as to the $40,000 item. As to that item the order is reversed and the cause remanded, with directions to overrule the objections thereto.

*Reversed in part and remanded, with directions.*

Mr. JUSTICE FARTHING took no part in this decision.