(No. 25266.— )

THE PEOPLE *ex rel.* John Toman, County Collector, Appellant, *vs.* 110 SOUTH DEARBORN STREET BUILDING CORPORATION, Appellee.

*Opinion filed December 12, 1939.*

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, JACOB SHAMBERG, and BRENDAN Q. O'BRIEN, of counsel,) for appellant.

ROBERT N. HOLT, WOODS, WOODS, BROWN & SALTER, and BARR, BARR & CORCORAN, (ADELBERT BROWN, and ROBERT E. CORCORAN, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Upon application of the county collector of Cook county for judgment and order of sale for delinquent taxes for 1936, the county court of Cook county sustained objections to the following taxes: First, to taxes for the Forest Preserve District of Cook county, on the ground that the appropriation ordinance was not published as required by law, and, second, to that part of the county tax under the item of county highways applying to the fund for bridges and grade separation, because it is claimed there was more than sufficient cash on hand at the beginning of the fiscal year to satisfy the total amount required for the said year. The county collector appeals directly to this court because a matter of revenue is involved.

The Forestry act of 1935, (State Bar ·Stat. 1935, chap. 57a, par. 12,) pertaining to forest preserve districts, provides that all ordinances making any appropriation of money shall, within ten days after their passage, be published at least once in some newspaper published in such district or having a general circulation therein, to be designated by the board of commissioners, and that no such ordinance shall take effect until ten days after it is published. Section 5 of the Notices act (State Bar Stat. 1935, chap. 100, par. 5) provides that when any notice is required by law or contract to be published in a newspaper (unless otherwise expressly provided in the contract) it shall be intended to be a secular newspaper of general circulation published in the city, town or county, or some paper specially authorized by law to publish legal notices in the city, town or county.

The appropriation ordinance in question was published in the *Daily Calumet,* a newspaper published within the

forest preserve district. Counsel for appellee does not raise the question that this newspaper is one not read by all classes of citizens or that the newspaper is not secular in character or its readers limited to a single class of persons. The only question raised is the adequacy of the newspaper's circulation throughout the taxing district. It is urged that the circulation of the newspaper must not be limited to a small portion of the municipal area but must be general throughout it. This contention was sustained by the trial court. The evidence shows that the newspaper has an average daily paid circulation of 6000 copies, is published in the English language, delivered into business and residential districts and is read by different classes of people; that it is disposed of through more than one hundred news stands and has a mail circulation of 181 copies. The issue printed in the abstract of record shows a printing of general news, local news, local items, sporting events, society items, legal notices and advertising matter. The newspaper has been published since 1884 and has been issued every day, except Sundays and holidays, since that time. It is published in the southeast part of Chicago and its circulation is largely in three or four wards in that part of the city, although the evidence shows that there are some subscribers uptown, and some few people receive it in different parts of Cook county by mail.

No Illinois authorities have been called to our attention holding that the circulation of a newspaper designated by law for publication purposes must be general throughout the municipal area. Throughout the many counties in Illinois newspapers are published whose circulation, in many instances, is limited to a village, small town or neighborhood. Newspapers of this class have been used for many years as the medium of publications required by law and, in the few instances where their sufficiency has been questioned, the question was not based upon how thoroughly the newspaper was circulated throughout the area under considera-

tion. There are many counties containing several small cities, each of which has its main newspaper circulating to a very large extent in the immediate neighborhood, but not generally throughout the county or State, which has been used for legal publications.

We have held that by the use of the words "general circulation" the legislature intended that of a general newspaper as distinguished from one of a special or limited character; a newspaper that circulates among all classes and is not confined to a particular class or calling in the community. *Eisenberg* v. *Wabash,* 355 Ill. 495; *Polzin* v. *Rand, McNally & Co.* 250 id. 561.

The statute with respect to publication of notices does not require it be in a newspaper of *general circulation throughout the municipal area* but, on the contrary, provides that such paper shall be "a secular newspaper of general circulation published in the city," etc. To require proof that a newspaper for publication purposes has a general circulation throughout the area of the city, county, State or forest preserve district, is to require something that is not in the statute. The statute only requires that the circulation be general and this court has defined precisely what the term "general" means. A circulation of 4000 in Cook county, (*Eisenberg* v. *Wabash, supra,*) and 6100 in the city of Chicago, (*People* v. *Snow,* 279 Ill. 289,) has been held sufficient. Authorities from other jurisdictions are not controlling. (*People* v. *Snow, supra.*) The newspaper in which the ordinance was published qualified under section 5 of the Notices act, *supra,* and since it includes within its terms all the requirements of publication contained in section 12 of the Forestry act, *supra,* the newspaper in which the ordinance was published qualified under the statute for publication purposes.

The only objection raised to the forest preserve district tax was the insufficiency of the publication of the ordinance, and since we have determined it was properly published

it is unnecessary for us to consider the effect of the validating act of the General Assembly in effect June 2, 1939.

The item in the county tax appropriation under the corporate purpose fund, payable from and included in the tax levy for bridges and grade separations, was $352,350.50. The total amount spent from the bridge and grade separations fund for the year 1936 was $58,340.34. Of this sum $1,831.40 was spent on bridges and none for grade separation. There was on hand at the beginning of the fiscal year, applicable to this fund, $170,246.25. The average expenditure out of this fund for the previous five years was $42,356.06. Objection to this tax was sustained on the ground that it was unnecessary to levy the same to meet the requirements of the fiscal year. The proposition that taxing bodies should not establish a rate which would result in unnecessary accumulation of public funds is thoroughly established, (*People v. Chicago and Northwestern Railway Co.* 331 Ill. 544; *People v. Baltimore and Ohio Southwestern Railroad Co.* 353 id. 492; *People v. Chicago and Alton Railroad Co.* 324 id. 179; *People v. New York, Chicago and St. Louis Railroad Co.* 353 id. 518;) and we believe this case comes clearly within the principles announced in these cases.

The cases cited by appellant are not at variance with the principle set out in the foregoing but only apply the law to different states of fact. Thus in *People v. Baltimore and Ohio Southwestern Railway Co. supra,* the county board made a levy of $15,000 for highway purposes. There was something over $10,000 cash on hand and the expenditures for the previous year for such purposes had been $15,591. Under such facts, it was held that the levy was not so grossly excessive as to show intent to accumulate funds faster than they were needed. So, in *People v. Illinois Central Railroad Co.* 366 Ill. 408, the cash balance on hand was less than the prior year's average expenditures, and the amount of tax levied for the year in question was

$4000 less than the prior year's average expenditures. The case of *People* v. *Wabash Railway Co.* 368 Ill. 497, lays down the well-established principle that courts will not interfere with the decision of taxing bodies on the question of the amount to be levied where it does not clearly appear that they have abused the discretion vested in them.

From the facts before us it appears that the cash on hand amounted to over four times the previous five-years' average expenditure and that the levy under consideration was about eight times the yearly average, or, assuming that the tax levied was collected and the average amount expended, a surplus would remain in the account over eleven times as large as the annual average expenditures. No explanation appears in the record for the accumulation of such a fund nor does any consideration appear to have been given to the amount of money on hand. No projected work is mentioned requiring payments in the amount appropriated. If it be for some undisclosed project to be developed at some future time, it would be invalid. (*People* v. *New York, Chicago and St. Louis Railroad Co. supra.*) Under the facts, there was an abuse of the reasonable discretion vested in the taxing authorities.

Appellant says, however, that the point was not properly saved by specific objections. One of the objections made to this item was that the taxes were extended in excess of the amount allowed by law. Upon the hearing of the cause, objection was made that this specification was not sufficient, whereupon the court considered the objection expanded to cover the proof offered by the objector. Attorneys representing both parties were before the court, evidence was being heard upon the proposition and appellee, relying upon the court's ruling that the objection as filed should be considered expanded so as to cover the proof, cannot be deemed to have waived its point by failure to obtain leave to amend its written objections in reliance

thereon. Since, at the time, the merits were being considered by the court, we think the situation comes within the principle laid down in *Chicago and Northwestern Railway Co.* v. *People,* 184 Ill. 174, and in *People* v. *Kankakee and Southwestern Railroad Co.* 237 id. 362. If this were a case where the claim of an improper levy was raised for the first time on appeal, or after all the evidence was taken, without advising the other party, the situation would be different. It is claimed, also, that the validating act of May 1, 1937, has the ·effect of rendering the tax valid. It will be observed that this curative act covers only three things: First, where the appropriations are not itemized in detail; second, where the amount appropriated, payable from other sources than the tax levy, is not specified, and, third, cases where the amount payable from the tax levy as to each specified item is not stated in the ordinance or apportioned to each item in the tax levy. There is nothing in the validating act that covers a situation where the levy or a part of the levy is void because it is excessive and beyond the needs of the municipal body. Since we have held that such a levy is not voidable but void, it is not to be presumed that the legislature intended, by the validating act, to do more than it had authority to do. Since the validating act does not cover the objection made to the fund for bridges and grade separation, either by general or specific language, it is without effect so far as this particular item is concerned.

The judgment of the county court of Cook county is reversed as to the forest preserve district tax and affirmed as to the contested item of the county tax.

*Affirmed in part and reversed in part.*