[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 527 
This is an appeal from a judgment of the county court of Kankakee county overruling the objections of the New York Central Railroad Company to certain taxes extended against its property for the year 1943. The cause is here for review as an agreed case, certified by the trial judge under Rule 48 of this court. The taxes involved are a portion of the county tax levied for general corporate purposes and the home relief tax levied by the town of Pilot.
Appellant contends the county levy was excessive in the amount of $61,286.81. The record shows the facts as follows: The board of supervisors of Kankakee county, on November 9, 1943, adopted their annual budget and annual appropriation ordinance for the fiscal year beginning September 1, 1943, and ending August 31, 1944. The budget contained estimated expenditures for general corporate purposes during that year, amounting to $180,400, and the appropriation ordinance made similar appropriations in the same amount. The budget also contained a statement *Page 528 
showing the estimated revenue for that period, exclusive of 1943 taxes, amounting to $159,136.81. Immediately following the adoption of the budget and appropriation ordinance and at the same meeting, the board of supervisors adopted their tax levy ordinance for the same fiscal year, in and by which they levied a tax for general county purposes in the total sum of $82,550. This levy exceeds by $61,286.81 the difference between the total appropriations and the statement of estimated revenue other than current taxes; and it is claimed that the levy is therefore excessive in the said sum of $61,286.81. It is the contention of appellant that the budget and appropriation ordinance are a limitation upon the amount of taxes that can be levied by the board of supervisors of a county; that the County Budget Act requires the budget to balance and limits the levy of taxes to such sum as will, together with the other estimated revenue shown in the budget for the fiscal year, equal the appropriations for expenditures in such year; and that any levy in excess of such sum is illegal and void. This contention necessitates an examination of the terms and provisions of the County Budget Act and an inquiry as to the object to be attained and the purposes served by a county budget and appropriation ordinance.
The statute, as it existed on November 9, 1943, (Ill. Rev. Stat. 1943, chap. 34, pars. 110g et seq.) is applicable to the present controversy, since the validity of a county tax is governed by the law in effect at the time the levy is made by the county board. (People ex rel. Hempen v. Baltimore and OhioRailroad Co. 379 Ill. 543; People ex rel. Dooley v. New York,Chicago and St. Louis Railroad Co. 371 Ill. 522.) The act requires the board of supervisors or board of county commissioners in all counties not required by law to pass an annual appropriation bill within the first quarter of the fiscal year, to adopt each year an annual budget for the succeeding fiscal year, which *Page 529 
budget shall contain (a) a statement of the receipts, payments, revenues and expenditures of the fiscal year last ended, (b) a statement of all moneys due or accruing to the county, and of all outstanding obligations or liabilities of the county, (c) estimates of all probable income for the current fiscal year and for the ensuing fiscal year covered by the budget, (d) a detailed statement showing estimates of expenditures for the current fiscal year, and, separately, the proposed expenditures for the ensuing fiscal year for which the budget is prepared, and (e) a schedule of proposed appropriations, which, when adopted by the county board, is known as the annual appropriation ordinance. It prohibits the making of further appropriations after the adoption of the budget, except as provided in the act, and prohibits the county board or anyone on its behalf from either directly or indirectly making any contract or doing any act which shall add to the county expenditures or liabilities in any year anything above the amount provided for in the annual budget, but permits transfers from one appropriation of any one fund to another of the same fund, not affecting the total amount appropriated, to be made at any meeting of the board by a two-thirds vote of all the members, and by a like vote to make appropriations in excess of those authorized by the budget in order to meet an immediate emergency.
The act also provides that nothing contained therein shall deprive the board of the power to provide for and cause to be paid from the county funds any charge upon the county imposed by law independently of any action of the board; and further states that except as therein provided no contract shall be entered into and no obligation or expense incurred by or on behalf of a county unless an appropriation therefor shall have been previously made. The act requires the county treasurer to keep a separate account with each fund to show at all times the cash balance thereof, the amount received for the credit of such *Page 530 
fund, and the amount of the payments made therefrom, and requires the county auditor in each county under township organization containing over 75,000 inhabitants and the county clerk in each other county to keep a similar account with each fund, and, in addition, to maintain an account with each appropriation of each fund, showing (a) the amount appropriated, (b) the date and amount of each transfer from or to such appropriation and the appropriations to or from which transfers were made, (c) the amount paid out under the appropriation, (d) the amount of outstanding obligations incurred under the appropriation, (e) the amount of the encumbered balance of the appropriation, and (f) the amount of the free balance of the appropriation. It provides that the failure to adopt an annual budget or to comply in any respect with the provisions of the act shall not affect the validity of any tax levy otherwise in conformity with law; but further provides that any violation of or neglect or failure to comply with the terms of the act shall be punished by a fine not exceeding $1000, or by imprisonment in the county jail not exceeding six months, or by both in the discretion of the court, and that in cases of violation by the county board, each member of the board participating in such action shall be subject to the aforesaid penalties. The above is the entire substance of the County Budget Act.
It is apparent from an examination of the budget that Kankakee county is operating on a cash basis; that it issues no tax anticipation warrants and has no outstanding bonds or other obligations or liabilities, except only current bills, which are presented, allowed and paid from month to month; that at the beginning of the fiscal year there remained a cash balance of $29,841.44 in the general corporate fund, which, after deducting all outstanding obligations chargeable against it, was reduced to $16,186.81; that the budgeted expenditures for the fiscal year payable out of this fund amount to $180,400; that the total amount *Page 531 
of the probable income estimated to be received by such fund, inclusive of said cash on hand, refunds payable to the county, fines, liquor licenses, earnings of county fee offices, and taxes for 1942 and previous years, but exclusive of 1943 taxes, amounted, in all, to $159,136.81; and that the authorized expenditures exceed, in the sum of $21,263.19, the budgeted revenue from sources other than current taxation. If, as appellant contends, the amount of taxes which the board of supervisors had authority to levy was limited to said last mentioned sum of $21,263.19, and taxes had been levied only in that amount, it is apparent that there would not be sufficient funds to pay the expenses of the county included in the appropriation ordinance unless the taxes levied would be collected in full during the fiscal year. It is common knowledge that the tax levies are seldom, if ever, collected in full during any current year, and that the full amount of the tax levied is usually never collected. But assuming that taxes were levied for the fiscal year in question in the sum only of $21,263.19 and that such taxes were collected in full in time to be available for payment of county expenses during the fiscal year, even in that event the county could not continue to operate upon a cash basis, but at the end of the fiscal year would be forced on a deferred or deficit basis. The county board in such case would not have in its treasury at the end of the fiscal period anything more than enough money to pay the bills and indebtedness then due; and unless the money needed to pay current expenses after that date was raised by issuing anticipation warrants, which would, of course, increase the county's expense of operation, the county could not continue to meet its obligations on time. This would necessarily impair the credit of the county and would involve the county in debt, without any corresponding advantage resulting to the taxpayer. We see nothing in the County Budget Act indicating the legislature intended to put a county in any such position, or which justifies *Page 532 
a conclusion that the act does not permit the county board to create a surplus so long as it uses good business judgment and exercises a reasonable discretion; and we can find no requirement, either in this statute or any other, that the amount of taxes which a county board is authorized to levy must be ascertained by deducting from the total amount of appropriations the total amount of estimated income other than the taxes to be levied. We recognize and are in full accord with the principles contended for by appellant, viz., that it is against the policy of the law to permit unnecessary accumulation of money in the public treasury; that the county board in levying taxes to meet the requirements of its appropriations should take into consideration the amount of money on hand and in process of collection; and that no greater tax than the actual need may be levied. These principles are not inconsistent with the well-established rule that governing bodies of municipalities may conduct their business on a cash basis and may carry reasonable cash balances from year to year for that purpose, (People ex rel.DeRosa v. Chicago and North Western Railway Co. 391 Ill. 347,) nor with the further rule, often announced by this court, that the question of the proper amount of taxes to be raised for current county expenses is committed to the reasonable discretion of the county board, and judicial interference will be exercised only to prevent a clear abuse of this discretion. (People ex rel.Harding v. Chicago and Northwestern Railway Co. 331 Ill. 544;People ex rel. Browne v. Chicago and Eastern Illinois Railway Co.306 Ill. 402; People ex rel. Stevenson v. Atchison, Topeka andSanta Fe Railway Co. 261 Ill. 33.) Although these last-cited cases were decided before the adoption of the County Budget Act, there is nothing in that statute which in any way abrogates, conflicts with, or alters the above-stated rule announced in those cases. The County Budget Act provides that an estimate of all receipts and expenditures shall be *Page 533 
contained in the budget and that the amount determined upon by the board as necessary to be expended shall be itemized in the budget and appropriation ordinance and that expenditures shall not be made for any other purposes or in any greater amounts than set forth in the appropriation ordinance. Inasmuch as county taxes are levied only in order to provide funds for corporate expenditures and no such expenditures are authorized other than those contained in the appropriation ordinance, it follows as a necessary consequence that taxes cannot be levied for any other purpose or in any greater amount than set forth in the itemized appropriation ordinance; but this does not conflict with the rule that the question of the proper amount of taxes to be levied is committed to the reasonable discretion of the county board, and does not relieve the board from the duty of exercising such discretion and require instead that it ascertain the amount of the tax levy by merely subtracting the estimated income from the appropriations. The county board, in addition to determining upon the amount proper, in its discretion, to be expended for county purposes, must also determine upon the amount of taxes which, in the exercise of its reasonable discretion, it considers necessary to be levied to meet the appropriations for such purposes. No hard and fast rule can be formulated for determining when a tax levied to meet appropriations shall be considered excessive. It is the duty of taxing bodies to maintain sufficient money in the treasury to meet their obligations as they become due, and they need not wait until the money is actually needed before levying a tax. (People ex rel. Wilson v. Wabash RailwayCo. 368 Ill. 497.) The presumption is that the county board has properly discharged its duty and has not abused its discretion in making the levy. The burden is not upon the collector in this case to show an exercise of reasonable discretion by the county board in making the 1943 levy. The burden is on the appellant to show a clear abuse of *Page 534 
this discretion. (People ex rel. Toman v. Edward Hines Lumber Co.385 Ill. 366.) Such abuse is not shown by the mere fact that the supervisors have levied a tax in a sum greater than the figure required to balance the amount of budgeted income with the amount of budgeted appropriations, or even by the fact that the tax levied will increase the available surplus in the county treasury and leave a larger cash balance on hand at the end of the fiscal year than was on hand at the beginning of such period. The record in this case contains no showing that the levy of $82,500 made by the board of supervisors of Kankakee county was greater than was reasonably required, in the exercise of sound business judgment, to provide for maintaining a balance in the treasury sufficient at all times to meet all current claims upon it, and there is no proof that said levy would increase the funds in the treasury more than was reasonably required in order for the county to conveniently operate upon a cash basis. The statement, contained in the budget, of the total revenue estimated to be received during the fiscal year is the sum of $201,636.81. This amount includes $42,500 estimated to be received from the 1943 tax levy of $82,500, which item is arrived at by deducting from the amount of the levy the part thereof uncollected at the end of the fiscal year, estimated at $40,000. It appears from the figures contained in the budget and appropriation ordinance that the supervisors, in making the levy of $82,500, estimated that this, together with the other revenue, would result in a cash balance in the treasury at the end of the fiscal year of $21,236.81. This does not appear in itself to be excessive or unreasonable. There is no showing made upon this record that the tax levy of $82,500 for county purposes was excessive or that the county board, in making the same, committed any abuse of discretion. The trial court properly overruled this objection. *Page 535 
Appellant also objected to an item of $8300 for the county farm home, set out in the county levy as follows:
 County Farm Home
 Superintendent's salary. $1,500 Matron's salary ........ 750 Farm labor ............. 350 ------ $2,600
 Food ............... $3,800 Clothing ........... 1,200 Medical care ....... 500 Burials ............ 200 $5,700 $8,300 ----- ------
The objection to this item is that the same is a levy for the general support of the poor at the county farm home, that the law casts the entire obligation of such support upon the various townships of the county, and therefore the levy is not for a lawful county purpose and is void. The collector denies that this levy is for the general support of the poor. He points out that the levy is divided into two parts, and claims that the first part, aggregating $2600 is for the maintenance of the county farm home, levied by virtue of authority of section 28 of the Pauper Act, and that the second part, aggregating $5700, is for the necessary expense of nonpaupers, levied under the authority of section 24 of the same act. The objector states in reply that there was a separate item of $2350 levied for the repair and maintenance of the county farm home, to which it made no objection, and that the record shows clearly that the levy objected to was made for the general support of the poor at the county farm.
At the time this levy was made no obligation rested upon Kankakee county for the general support of paupers. This obligation belonged to the various townships of the county. (Ill. Rev. Stat. 1943, chap. 107, par. 15.1.) Neither was there, at the time of the levy, any obligation resting upon the county to furnish assistance to persons not coming *Page 536 
within the technical term of "paupers," but who are nevertheless unable to pay the necessary expense incident to their illness or death. Section 24 of the Pauper Act, as it formerly existed, was as follows: "When any non-resident, or any person not coming within the definition of a pauper, of any county shall fall sick or die, not having money or property to pay his board, nursing and medical aid or burial expenses, the overseer or overseers of the poor shall give, or cause to be given to him such assistance as they may deem necessary and proper, or cause him to be conveyed to his home, and if he shall die, cause him to be decently buried; and the county shall pay the reasonable expense thereof, which expenses of board, nursing, medical aid and burial expenses, may be recovered from the relatives of the said pauper, or from the county of which he is a resident, in an appropriate action." (Laws of 1935, p. 1057.) This section was subsequently amended March 6, 1936, (Laws of 1935-36, Second Special Session, p. 77,) but the obligation of the county was not changed by the amendment. (People ex rel. Hempen v. Baltimore Ohio RailroadCo. 379 Ill. 543.) However, on July 16, 1941, this section was amended (Laws of 1941, vol. 1, p. 1003,) so as to entirely relieve from such obligation all counties which are under township organization and in which is situated no city, village or incorporated town of more than 500,000 inhabitants or no incorporated town which has superseded a civil township, among which class of counties is the county of Kankakee, of which we will take judicial notice. (People ex rel. Clarke v. Jarecki,363 Ill. 180; Ill. Rev. Stat. 1945, chap. 24, par. 7-50.) Appellee, to sustain his contention that the county was liable for the care of persons who are not paupers, but who fall sick or die without the means of paying their necessary expenses, relies upon the decision of this court in People ex rel. Hempen v. Baltimore Ohio Railroad Co. 379 Ill. 543, and upon *Page 537 
section 24 of the Pauper Act as it existed in 1939, when the levy objected to in the Baltimore Ohio Railroad Company case was made. The amendment of 1941 renders section 24 as it previously existed inapplicable to this case, and the decision in theBaltimore Ohio Railroad Company case is therefore not in point.
However, we believe that this levy of $8300 for the county home farm is valid and may be sustained by statutory authority other than section 24 of the Pauper Act. That part of the levy made for the superintendent's salary, the matron's salary, and farm labor, aggregating the sum of $2600, was clearly authorized by section 28 of the Pauper Act. (Ill. Rev. Stat. 1943, chap. 107, par. 29.) That section authorized the county board of each county in the State to acquire a suitable tract or tracts of land upon which to erect and maintain a county poorhouse and other necessary buildings in connection therewith, and to establish and maintain a farm for the employment of the poor, and to erect and maintain such buildings and establish and maintain such farm, which shall be conducted by the county only through its officers, agents or representatives. This section further gave the county board the power to appoint a keeper of the poorhouse and all necessary agents and servants for the management and control of the poorhouse and farm and prescribe their compensation and duties, and the power to make appropriations out of the county treasury for the purchase of land and the erection of buildings and to defray the expense necessary in the care and maintenance of the same, and to cause the amount sufficient for said purposes to be levied upon the taxable property of the county and collected as other taxes. The board of supervisors of Kankakee county had undoubted authority to levy taxes for the superintendent's salary, the matron's salary and farm labor at the county home; and this levy is in nowise invalidated by the fact *Page 538 
that the board in another item, designated "repairs and maintenance of the county farm home," had made a levy for water, coal, lights, telephone and repairs.
Section 33 of the same act (Ill. Rev. Stat. 1943, chap. 107, par. 34,) authorized all the poor persons of the townships located within the county to be cared for and supported at such poorhouse. In addition, the legislature, by a separate statute, entitled "An Act to provide for the establishment and maintenance of county poor houses," (Ill. Rev. Stat. 1943, chap. 107, pars. 37, 38 and 39,) has provided that the county board may establish and maintain a county poorhouse, at which the townships of the county may have the poor and indigent persons lawfully resident within their respective territories, or any other persons whom they are bound to relieve and assist, supported and cared for, by paying therefor the daily or weekly rate fixed by the county board. This act conferred upon the county board, for the purpose of establishing and maintaining such poorhouse, all the power given to county boards by section 28 of the Pauper Act above mentioned; and expressly provides that each township of the county may have its paupers supported in such poorhouse by paying to the county agent in charge of the poorhouse, or otherwise, as provided by the county board, the rate fixed for the support and maintenance of such paupers in the county poorhouse. The act further provides that the county agent in charge of the poorhouse shall not receive any paupers except upon the order of the overseer of the poor or like officer of the governmental unit to which the paupers belong, and that if any of such governmental units fail to pay for the support of their paupers, the county agent may be authorized by the county board to return such paupers to the governmental unit to which they belong, or the county may sue for and recover the amount due for taking care of such paupers. This statute clearly contemplates and its provisions authorize and require county boards in *Page 539 
counties of the class to which Kankakee county belongs to furnish all proper and necessary support and maintenance to the paupers of the various townships who are received at the county poorhouses, and require the townships to whom the paupers belong to pay the county for the support and maintenance so furnished by the county to such paupers. To "support" according to Webster is "to maintain;" and to "maintain" is "to support, * * * to keep up;" to supply with what is needed. It cannot reasonably be said that support and maintenance do not include food, clothing, and, also, medical care, since proper medical treatment for the sick is deemed as necessary as the providing of food for the hungry; and, in our opinion, the support and maintenance which the statute authorizes the county to provide for the paupers at the county poorhouse includes also the burial of those whose deaths occur while there. Burial is one of the necessities which civilization requires for a deceased pauper. It is the final and necessary step to be taken in carrying out the objective of the statute.
It is clear the county board, in order to operate and maintain the county poor farm, as contemplated by the statute, must necessarily provide and furnish the food, clothing, medical care and burial, needed for the pauper inmates of the county poorhouse which it has under the law seen fit to establish and for such purpose is authorized to make all proper and necessary appropriations out of the county treasury and to cause an amount sufficient for such purpose to be levied upon taxable property of the county and collected as other taxes. (Ill. Rev. Stat. 1943, chap. 107, pars. 37, 38, 39 and 29.) This does not, in any way, relieve the townships under section 15 of the Pauper Act (par. 15.1) of their duty to support, including burial, all poor and indigent persons lawfully resident within their respective territories, and their payment for the support, including burial, of their paupers which they have sent to *Page 540 
such county poorhouse at the rate per day or week as fixed by the county board; and does not interfere with the county board establishing and maintaining the county poorhouse and levying the necessary tax for its maintenance in accordance with the provisions of the statute. It does not, in any way, place an unreasonable burden on the counties operating under township organization, and is strictly applicable in this case for the reason that such counties are reimbursed by their collections from the townships. To prevent a deficit, they have power to fix the rate at which paupers may be cared for in the county home and the county is authorized to return such paupers to the governmental unit to which he or she may belong if such governmental unit fails to pay for such support; and the county may also sue and recover the amount due for taking care of such paupers. We cannot agree with appellant's contention that, under such conditions, the levy for food, clothing, medical care and burials is unauthorized by the statute.
The last tax objected to was an item of $1200 for home relief, included in the levy of $2175 made by the town of Pilot for poor-relief purposes. The appropriation ordinance itemized the appropriations for home relief, and then recited the total of those items as "total for home relief (including veterans) $1665." This court has repeatedly held that a tax levied for "home relief, (including veterans)" is void. (People ex rel.Voorhees v. Chicago, Burlington Quincy Railroad Co. 386 Ill. 200; People ex rel. Little v. Peoria Eastern Railway Co.383 Ill. 79; People ex rel. Chamberlain v. Chicago, Burlington Quincy Railroad Co. 383 Ill. 212.) Appellee argues that the levy here is legal because the words "(including veterans)" appeared only in the appropriation ordinance and were not carried into the tax levy. This cannot avail appellee. An illegal or void appropriation cannot afford the basis for the levy of a valid tax. Appellee claims further, *Page 541 
in support of the tax, that the budget and appropriation ordinance involves the budgeting of cash from a previous levy, and neither estimates, appropriates, nor purports to expend any part of the money to be derived from the current levy, that it shows that no part of the 1943 taxes is to be anticipated and shows that the town has on hand, in cash or from the 1942 levy, all money necessary to pay all appropriations for 1943; and argues that since there is no reference or relation of the budget and appropriation ordinance of the town for the year 1943 to its tax levy of 1943, any invalidity in the budget and appropriation ordinance does not affect the validity of the levy. He cites in support of this contention People ex rel. Prindable v. IllinoisCentral Railroad Co. 389 Ill. 474, and People ex rel. Manifold v.Wabash Railroad Co. 389 Ill. 403, holding that a budget and appropriation ordinance budgeting only money on hands or available, without including any funds to be derived from a levy made in the same year, had no relation to and could not affect or invalidate the current tax levy. It is not necessary for us to notice this argument of appellee, since a short answer is that the budget here expressly budgets "taxes to be received in this fiscal year from new (1943) levy." The levy of $1200 made by the town of Pilot for home relief was void; and the objection of appellant to this tax should have been sustained.
The judgment of the county court of Kankakee county sustaining the validity of the county tax is affirmed, but the judgment overruling the objection to the tax levied by the town of Pilot for home relief is reversed, and the cause is remanded, with directions to sustain the objections to that tax.
Affirmed in part and reversed in part and remanded, withdirections. *Page 542