*In re* APPLICATION OF COUNTY COLLECTOR.—(AUDREY WALGENBACH, County Collector of McHenry County, Claimant-Appellee, *v.* CHICAGO AND NORTHWESTERN RAILWAY COMPANY *et al.*, Objectors-Appellants.)

Second District (1st Division)   No. 75-209

Opinion filed August 19, 1976.

Kell & Conerty, of Woodstock, Glaeser, Burstein & Gates, of Dundee, and Abbamonto & Szura, of Cary, for appellants.

William J. Cowlin, State's Attorney, of Woodstock, and Hugh C. Griffin, of Lord, Bissell & Brook, of Chicago (Richard R. Cross, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This is a suit brought by the tax collector of McHenry County to collect taxes levied against the objectors, who are taxpayers in that county. They challenged 1972 tax levies by High School District 155, alleging that it was attempting to "accumulate and retain an unusually large balance and surplus over and above requirements." The trial court, in a bench trial, found that the objectors had "not sustained their burden of proof," that the levies "were necessary for the proper function of the School District" and that "the fund is not an excessive accumulation." It therefore overruled the objections and this appeal followed. We affirm.

School District No. 155, McHenry County, Illinois, in 1972, made a tax levy of $2,522, 122 for its educational fund and $404,225 for its building fund. The defendants when sued for delinquent taxes claimed that the education fund levy was excessive to the extent of $117,191 and the

building fund levy was excessive to the extent of $349,882.42 (this figure even by the taxpayers own computations appears to be erroneous; the taxpayers in their pleadings labored under a misapprehension as to the amount of the actual levy extension for the building fund.) The taxpayers alleged in their objections that the building fund expenditures for the previous fiscal years had been $2,530,427.46; $2,970,990.33; and $3,325,588.64, the average cost of operations for one year, being $2,942,335.48, and that the estimated two-year requirements at the time of the levy (which they computed as 105% of twice the previous year's (1971-1972) expenditures) was $6,983,736. They further alleged that the fund net worth July 1, 1971, was $1,971,575.23 that the 1971 taxes in process of being collected was $1,961,246.17, and certain claims receivable were $645,982.72, and that subtracting these amounts from the estimated two-year requirements, the levy required for 1972 taxes for the education fund was only $2,404.931.

Similarly, they alleged that the expenditures for the building fund in the previous three fiscal years were, respectively, $417,573.20, $336,930.07, $366,697.74, the average cost of operations therefore being $373,733.67, and that the estimated two-year requirements (based on 105% of twice fiscal year 1971-1972's actual expenditures) was $770,065. They further alleged that the fund net worth on July 1, 1971, was $253,449.02 and the 1971 taxes in process of collection were $355,321.40, and that subtracting these sums from the estimated requirements the levy required for 1972 taxes for the building fund was only $161,294.58.

There is absolutely nothing in the record to indicate that the taxpayers at any time introduced any evidence to support the allegations they had made or to show that their figures were either accurate or reasonable. (The taxpayers claim that there was a stipulation as to their accuracy but this does not appear in the record.)

Mr. Ackerman, the business manager of the school district, testified that the estimated budget for the fiscal year 1972 was prepared before the 1972 levy request was prepared, that the budget was based on the best available estimates for expenditures and that this estimated budget was the best available figure in which to base the levy request. He also stated that because of the time between the tax levy and its collection the district exhausted its cash reserves in the building fund in both fiscal years 1972 and 1973 and had to borrow from the working cash fund and also issue tax anticipation warrants. Moreover, the District only receives about 98% of the levy extension.

Mr. Froehlich, the accountant who supervised the preparation of the school district's financial statements, testified that the "fund balance" is computed by taking the assets including taxes being collected less the liabilities. He also stated that the taxpayer's method of computation was

unrealistic and inadequate because the actual expenditures vary from year to year (in 1972-1973 they were $3,463,217 and in 1973-1974, $3,851,834) and a 5% allowance for inflation over a two-year period was unrealistic. The 1972 tax levy was collected after July 1, 1973, and applied to operating expenses in the fiscal year ending June 30, 1974. The District's balance sheets reveal that in order to pay its educational and building fund expenses during the 1973-1974 year (the year the 1972 levy was received) the District had to borrow $374,939 from the working cash fund and sell $145,000 of tax anticipation warrants; in 1972-1973 the figures were $293,141 and $200,000; in 1971-1972 $214,969.74 and $200,000.

■■ The estimation of the amount required to meet the obligations of a taxing district is ordinarily committed to its reasonable discretion and the court will not interfere with the district's exercise of its sound business judgment except where there is a clear abuse of discretion. (*People ex rel. Harding v. Chicago & Northwestern Ry. Co.* (1928), 331 Ill. 544, 163 N.E. 355; *People ex rel. Schaefer v. New York, Chicago & St. Louis R.R. Co.* (1933), 353 Ill. 518, 187 N.E. 443; *People ex rel. Kramer v. Chicago, Burlington & Quincy R.R. Co.* (1956), 8 Ill. 2d 382, 134 N.E.2d 335; *People ex rel. Sweet v. Central Illinois Public Service Co.* (1971), 48 Ill. 2d 145, 268 N.E.2d 404.) The presumption is that the taxing body has properly discharged its duty and has not abused its discretion in making the levy (*Harding v. Chicago & North Western Ry.* (1928), 331 Ill. 544, 163 N.E. 355; *People ex rel. Bergan v. New York Central R.R. Co.* (1946), 392 Ill. 525, 64 N.E.2d 895; *People ex rel. Kramer v. Chicago, Burlington & Quincy R.R. Co.* (1956), 8 Ill. 2d 382, 134 N.E.2d 335; *People ex rel. Sweet v. Central Illinois Public Service Co.* (1971), 48 Ill. 2d 145, 268 N.E.2d 404); and the burden is on the objectors to overcome this presumption and show a clear abuse of discretion (*People ex rel. Harding v. Chicago & North Western Ry.* (1928), 331 Ill. 544, 163 N.E. 355; *People ex rel. Schaefer v. New York, Chicago & St. Louis R.R. Co.* (1933), 353 Ill. 518, 187 N.E. 443; *People ex rel. Bergan v. New York Central R.R. Co.* (1946), 392 Ill. 525, 64 N.E.2d 895; *People ex rel. Kramer v. Chicago, Burlington & Quincy R. R. Co.* (1956), 8 Ill. 2d 382, 134 N.E. 2d 335) by clear and explicit testimony. *People ex rel. Stevenson v. Atchison, Topeka & Santa Fe Ry. Co.* (1913), 261 Ill. 33, 103 N.E. 614.

■■ In this case, the objectors have failed to introduce any evidence at all. Unsworn allegations are not evidence. And even if they were, there is no evidence either as to the figures' accuracy or relevancy. The defendants base their estimates only on previous years' expenditures and fail to take into consideration the increased costs of maintaining and operating schools. (See *People ex rel. Salm v. Crear* (1921), 300 Ill. 611, 133 N.E. 287.) Conditions affecting financial needs vary from year to year and it is the duty of a taxing body to anticipate such changes and to

provide for its needs in the light of the same. (*People ex rel. DeRosa v. Chicago & North Western Ry. Co.* (1945), 391 Ill. 347, 63 N.E.2d 401.) Furthermore, the defendants' estimate of total cash resources are clearly in error, since the total cash resources is not a total of the fund net worth and taxes in collection. Fund net worth includes the taxes in collection.

■■ Even if we assume, despite the evidence, that the amounts levied plus any cash on hand and anticipated collections (both of which must be considered, (*People ex rel. Luers v. Chicago & Alton R. R. Co.* (1926), 324 Ill. 179, 154 N.E. 893) exceed the anticipated expenditures, there has been no clear showing of any abuse of discretion. The school district is entitled to conduct its business on a cash basis (*People ex rel. Bergan v. New York Central R. R. Co.* (1946), 392 Ill. 525, 64 N.E.2d 895) and may carry reasonable cash balances from year to year. (*People ex rel. Bergan v. New York Central R. R. Co.* (1946), 392 Ill. 525, 64 N.E.2d 895; *People ex rel. DeRosa v. Chicago & North Western Ry. Co.* (1945), 391 Ill. 347, 63 N.E.2d 401.) It is not necessary for taxing authorities to wait until the money is actually needed for paying outstanding obligations before taxes may be levied. (*People ex rel. Salm v. Crear* (1921), 300 Ill. 611, 133 N.E. 287; *People ex rel. Harding v. Chicago & North Western Ry. Co.* (1928), 331 Ill. 544, 163 N.E. 355; *People ex rel. Kramer v. Chicago, Burlington & Quincy Ry. Co.* (1956), 8 Ill. 2d 382, 134 N.E.2d 335; *People ex rel. Sweet v. Central Illinois Public Service Co.* (1971), 48 Ill. 2d 145, 268 N.E.2d 404.) They should anticipate as nearly as possible the amount of money necessary to be raised to meet the costs of operating the political subdivision for which they are the taxing authorities and must arrange to have sufficient funds on hand to meet obligations when they become due (*People ex rel. Salm v. Crear* (1921), 300 Ill. 611, 133 N.E. 287; *People ex rel. Kramer v. Chicago, Burlington & Quincy R. R. Co.* (1956), 8 Ill. 2d 382, 134 N.E.2d 335; *People ex rel. Sweet v. Central Illinois Public Service Co.* (1971), 48 Ill. 2d 145, 268 N.E.2d 404.) The sale of anticipation tax warrants yearly costs the taxpayer more than does the collection of taxes a few months early. (*People ex rel. Stevenson v. Atchison, Topeka & Santa Fe Ry. Co.* (1913), 261 Ill. 33, 103 N.E. 614.) It is only when it is shown that the intention of the taxing body in making the levy is to provide a surplus to be used for other purposes or that the amount of the levy is grossly excessive and shows an intention to accumulate funds faster than are likely to be needed for school purposes that an abuse of discretion will be found (see *People ex rel. Clark v. Baltimore & Ohio Southwestern Ry. Co.* (1933), 353 Ill. 492, 187 N.E. 463).

The cases relied upon by the taxpayers all involve situations where the taxing bodies had a large surplus of cash on hand unlike the school district here which has to borrow funds yearly. Thus in *People ex rel. Toman v. 110 South Dearborn Street Building Corp.* (1939), 372 Ill. 459, 24 N.E.2d

373, its cash on hand was over four times the previous average expenditures, the levy over eight and no projected work was shown justifying the surplus made. Where the surplus has been less the courts have usually found that the levy was for an improper purpose. Thus in *Central Illinois Public Service Co. v. Miller* (1969), 42 Ill. 2d 542, 248 N.E.2d 89, the court struck down a tax levy where the cash on hand was 2.84 times the annual average spent in the last three years and 3.24 times the amount spent in the previous fiscal year, where the purpose of the levy was to qualify for State assistance, and, where, unlike the present case, there was an increasing cash balance. Likewise in *People ex rel. Leaf v. Roth* (1945), 389 Ill. 287, 59 N.E.2d 643, a levy was struck down where the cash on hand was nearly twice the estimated expenditures where the court found that the only purpose for the levy was to raise funds to be used in the payment of indefinite and uncertain items.

■■ On the other hand, the courts have frequently upheld levies despite large cash balances on hand where no improper purpose was shown. Thus in *People ex rel. Batman v. Illinois Central R. R. Co.* (1937), 366 Ill. 408, 9 N.E.2d 310, levies were upheld although the cash on hand and uncollected taxes exceeded the average annual cost of operation in certain instances by 200-300%, the court pointing out that there was nothing to show what were the anticipated expenses. Likewise in *People ex rel. Manifold v. Wabash Ry. Co.* (1944), 386 Ill. 149, 53 N.E.2d 976, the court upheld two levies where the amounts levied, as here, proximated the actual amounts spent by the district for the purposes indicated during the following fiscal year although as to one fund the district had over three times as much cash on hand and being collected as the average annual cost of operation in the three preceeding years, and as to the other fund the district had 6½ times as much, it not appearing that the levies were made for the purpose of creating a surplus or for any other purpose than that indicated. *Manifold* clearly is controlling here where, as there, the actual expenditures approximated the amount of the levy and no improper purpose was shown.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.