(No. 21906.—

THE PEOPLE *ex rel.* F. H. Clark, County Collector, Appellee, *vs.* THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY, Appellant.

*Opinion filed October 21, 1933.*

CREIGHTON & THOMAS, and KRAMER, CAMPBELL, COS-
TELLO & WIECHERT, (MORISON R. WAITE, and WILLIAM
A. EGGERS, of counsel,) for appellant.

C. W. CREIGHTON, State's Attorney, (C. DENEEN
MATTHEWS, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The Baltimore and Ohio Southwestern Railway Com-
pany filed objections to the application of the county col-
lector of Wayne county, at the September term, 1932, of
the county court of that county, for judgment and order

of sale against its property for taxes of the year 1931. The objections were overruled, judgment was rendered against the property, and the railway company has appealed.

Appellant objected to $872.30 of the taxes extended against its property pursuant to a levy made by the county board of the county at its meeting in September, 1931, for county highway purposes. The objection to this tax is that the county board has in previous years diverted from the county highway fund large sums of money and used them for other than highway purposes; that if the money in the county highway fund had not been so diverted there would have remained therein more than sufficient money for the purposes for which the tax levy was made; that notwithstanding the diversions there was in the county highway fund at the time the levy was made, sufficient money to defray the expenditures for highway purposes for the ensuing year, and therefore there was no necessity for the levy. The levies made for county highway taxes for 1927 and subsequent years, with the rates extended on each $100, are as follows:

| Year | Levy | Rate |
|------|------|------|
| 1927 | $80,000 | .50 |
| 1928 | 43,500 | .37 |
| 1929 | 28,000 | .12 |
| 1930 | 25,500 | .20 |
| 1931 | 15,000 | .12½ |

By the order of the county board in 1928 there was diverted from the county highway fund to the general county fund the sum of $40,300, and in 1929 there was diverted the sum of $23,868.28. The county treasurer's report for 1931, approved by the county board at its meeting in December of that year, showed that $5450 had also been transferred from the county highway fund to the

general county fund. All together the transfer from the county highway fund to the county's general fund amounted to $69,618.28. There was $10,131.58 in the county highway fund when the levy of $15,000 in 1931 was made. The actual expenditures for county highway purposes were as follows: 1928, $15,591.19; 1929, $20,166.83; 1930, $14,458.34; 1931, $15,661.74.

Section 14 of "An act in relation to State highways," approved June 24, 1921, by the provisions of which the county highway tax is authorized to be levied, provides that all moneys derived from the county highway tax shall be placed in a separate fund to be known as the county highway fund and shall be used for no purpose other than county highway purposes. The county board had no right or authority to cause funds to be transferred from the county highway fund to the general county fund or to any other fund, and its orders for such diversions were illegal. The above mentioned tax levies made prior to 1931 were manifestly excessive if we are to determine the amounts really necessary by the amounts actually expended for highway purposes. Appellant made no objection to those levies and paid the taxes assessed against it. The amount levied for county highway taxes in 1931 was less in amount than the average actual expense of the preceding years. Appellant made no showing of the amount that would be required for county highway purposes for the year following the 1931 levy. The amount expended in each year prior to that levy was in excess of $10,131.58, the balance on hand at that time.

Taxes are levied because they are necessary to defray the expenses of government—not to enrich the public treasury. The unnecessary accumulation of money in the public treasury is unjust to the people, depriving them of the use of their money for a considerable period, and is also unwise, because it may tempt those having custody of the funds to use them improperly. (*Mathews* v. *City of Chi-*

*cago,* 342 Ill. 120; *People* v. *Illinois Central Railroad Co.* 266 id. 126.) It is the duty of public authorities to use sound business judgment in estimating the amount of taxes required each year, and they have the right to provide a fund from which to meet obligations when they become due. (*Mathews* v. *City of Chicago, supra.*) A tax levy largely in excess of the amount required for the purpose for which it is made, with the intention of creating a surplus to be used for another purpose, is not a legal tax levy even though the rate is within the limit fixed by statute. (*People* v. *Illinois Central Railroad Co.* 266 Ill. 636.) But the burden rests upon an objector to sustain his objection to a tax, and the courts will not interfere with the decision of taxing bodies on the question of the amount of taxes to be levied where it does not clearly appear that they have abused the discretion vested in them. (*People* v. *Sandberg Co.* 277 Ill. 567.) From an examination of this record we cannot say that it is clearly shown that it was the intention of the county board, in making the levy for highway purposes in 1931, to provide a surplus in the county highway fund to be used for a purpose other than county highway purposes, or that the amount of the levy is grossly excessive and shows an intention to accumulate funds faster than they are likely to be needed for highway purposes. The county court did not err in overruling the objection to the county highway tax.

Another objection of appellant related to a tax of the town of Barnhill for the payment of principal and interest on road bonds. The amount necessary to be raised for this purpose, as shown by the certificate of levy, was $7150. The assessed valuation of the taxable property of the town for 1931 was $471,886. Taxes for this purpose were extended at a rate of $1.58 on the $100 assessed valuation, making a total amount extended of $7455.80. Appellant objected to the taxes extended against its property for the purpose in excess of the amount extended at a rate of $1.55.

At the rate of $1.55 the total amount of taxes extended for such purpose would have been $7314.23, but it was shown that the collector's fees and clerk's fees on the amount necessary to be raised would be $236.81. This sum added to the required amount, $7150, makes $7386.81. It is apparent, therefore, that the rate of $1.55 would not have produced the amount of revenue necessary for this purpose. When the amount of fees for extending and collecting the taxes is deducted from the amount extended at the $1.58 rate there is an excess of only $68.98, allowing nothing for the amount that may not be collected. It cannot be said that there was an abuse of discretion on the part of the county clerk in making the allowance for cost of collection and loss by uncollected taxes in extending taxes for this purpose. No error was committed in overruling this objection.

An objection was filed to the tax for educational purposes of school district No. 141 on the ground that no legal levy had been made therefor. The evidence shows that a meeting of the directors of this school district was held at the home of G. T. Haegele, clerk of the board of directors, on July 27, 1931. There were present Haegele and A. C. Wilson, another of the directors. W. A. Lasater, the third director, was president of the board but did not attend the meeting. The record made by the clerk of the meeting showed only the following: "The board levied $700 July 27, 1931." All three directors of the district had notice that the meeting would be held at Haegele's home on the evening of July 27. In the absence of the president, Wilson acted as president. Haegele testified that at the meeting he and Wilson figured the amount necessary to be levied to run the school for the ensuing year and agreed that the amount necessary to be levied was $700; that Wilson told him to write up the certificate for that amount; that the next morning he wrote up the certificate, signed it as clerk and took it to Wilson, who signed it as

president. Wilson testified that at the meeting he and Haegele figured that $700 would be required to be raised by taxes to run the school the next year; that he made a motion that a levy of that amount be made, and there was a unanimous vote in favor of the motion. On this evidence the court permitted the record of the meeting to be amended so as to read as follows: "The board met at the home of Mr. Haegele, clerk of school district No. 141, on the night of July 27, 1931, for the purpose of levying tax on all real and personal property of said district for the purpose of maintaining school for the ensuing year. The board met pursuant to a call of the president, two members, Mr. A. C. Wilson and Mr. G. T. Haegele, being present. In the absence of the president, Mr. Lasater, it was agreed between the clerk, Mr. Haegele, and the other member, Mr. Wilson, that Mr. Wilson act as president *pro tem* in the absence of Mr. Lasater. Mr. Wilson moved that $700 be levied in school district No. 141 on all real and personal property in said district for the purpose of maintaining school for the ensuing year. Both members of the school board present agreed." The record as amended correctly sets forth the proceedings of the meeting of the board of directors at which the levy was made as those proceedings were related in the testimony. There was no error in permitting the amendment to be made. *People* v.. *Chicago, Milwaukee and St. Paul Railway Co.* 326 Ill. 179.

It is contended that the record as amended does not show that the levy was legally made because it fails to show that a yea and nay vote was taken on the question of making the levy. Appellant cites and relies on *People* v. *Wabash Railway Co.* 308 Ill. 604, where it was held that the statute which requires county boards to vote on all propositions to appropriate money from the county treasury by ayes and nays likewise requires such a vote be taken on the question of levying a county highway tax. Section 112 of the School act provides as to school di-

rectors that on all questions involving the expenditure of money the yeas and nays shall be taken and entered on the record of the proceedings of the board. While the levy of a tax may be held to be an appropriation of money it certainly is not an expenditure of money. No provision of the School law requires school directors to take a yea and nay vote on the question of levying a tax. The requirement is made only as to questions involving the expenditure of money. The record of the meeting of the school directors as amended shows a valid levy of the tax objected to, and there was no error in overruling the objection.

Appellant also filed an objection to the road and bridge taxes of the towns of Keith, Bedford, Lamard, Big Mound and Barnhill, which were extended at a rate in excess of twenty-five cents on the $100 assessed valuation. The rate at which these taxes were extended was in each instance thirty-three cents on the $100. The objection is that the provision of section 56 of the Road and Bridge act of 1913 as amended, granting the board of town auditors of a town the power to consent to a levy of taxes for road and bridge purposes in excess of twenty-five cents but not in excess of thirty-three cents on the $100 of assessed valuation is unconstitutional, because it confers on justices of the peace, as members of the board of town auditors, non-judicial functions, and also because it confers on boards of town auditors an arbitrary power, in violation of the due process of law clause of the constitution. The questions raised by the objection to these taxes have been passed upon and decided adversely to the contention of appellant in *People v. Eastern Illinois and St. Louis Railway Co.* 353 Ill. 40. There was no error in overruling the objection to these taxes.

The judgment of the county court is affirmed.

*Judgment affirmed.*