(No. 28036.—)

THE PEOPLE *ex rel.* Garfield R. Leaf, County Collector, Appellee, *vs.* CLAUDE A. ROTH, Trustee of the Property of Chicago and North Western Railway Company, Appellant.

*Opinion filed January 17, 1945—Rehearing denied March 15, 1945.*

PAUL MACGUFFIN, of Libertyville, and NELSON TROTTMAN, of Chicago, (NELSON J. WILCOX, of Chicago, of counsel,) for appellant.

HARRY A. HALL, State's Attorney, and CLARENCE W. DIVER, both of Waukegan, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The trustee of the property of the Chicago and North Western Railway Company, appellant herein, paid, under protest, taxes levied in 1941 by High School District No. 113 in Lake county for building purposes. When application was made by the county collector of that county for judgment for delinquent taxes, the trustee filed objection to such levy. The total levy for building purposes of $78,720 was protested. Such levy, when extended, produced a tax against appellant's property of $1341.60.

The fiscal year of the school district began July 1, 1941, and ended June 30, 1942. Within the time fixed by statute, the board of education of said district adopted an annual budget and appropriation ordinance as required by the Illinois Municipal Budget Law. (Ill. Rev. Stat. 1943, chap. 120, par. 365.1 *et seq.*) There were two items of receipts:

Cash on hand, June 30, 1941................$ 71,915.22
Estimated receipts from 1940 tax levy, less loss
 and cost of collection.................. 75,465.89

 Total . . ...........................$147,381.11

The total estimated expenditures were fixed at $85,780.24. Included in this total was an item of about $34,000 to meet bond maturities and interest that would be due within the year. Of this item there was about $22,000 that had been provided for by levy when the bonds were issued. There remained approximately $12,000 to be paid from the building-fund levy. Later, a supplemental ordinance was adopted which added $14,000 to the estimated expenditures, thereby raising the total estimated expenditures to $99,780.24. Thus, it will be noted that the available receipts were about $60,000 in excess of the estimated expenditures. This did not include any money to be received from the 1941 levy. In other words, if the total levy was collected in the year in which it was made, there would be a balance of receipts above expenditures of about $137,000. The average yearly expenses for building purposes for the two preceding years were about $65,000.

The time the 1941 levy would be available to pay debts is pertinent. It would be extended in January or February, 1942, approximately thirty per cent of it would be collected before July 1, 1942, and the remainder would be received after said date. The board did not include any part of the 1941 levy as an available asset for that year.

When the levy was made in July, 1941, the district had available assets, not including the 1941 levy, of a little less than twice the estimated expenditures and a little more than double the average yearly expenditures of the two preceding years. To meet the implications that would arise from such financial condition and to support an additional levy, the school district introduced evidence to show that several projects were considered prior to the making of the levy, that might, if war priorities permitted the purchase of material, be constructed during the year.

Appellant, in reply to the contentions made by the district as to the effect of such evidence, summarizes the issue for determination by stating that it must be determined whether, under the circumstances shown, the board of education "abused their discretion in making a levy whose real purpose was to provide for carrying out in some future year or years projects claimed to be in contemplation but not included in the current budget and concededly not to be undertaken during the current year."

Counsel for the school district says that appellant's statement of the question involved amounts to an admission that the board of education had the power to levy taxes so as to be able to operate on a cash basis and that it may accumulate and maintain a cash balance sufficient to cover two years' normal requirements. Such contention necessitates consideration of two propositions. May the levy be sustained as an attempt to accumulate funds to pay for projects to be constructed in the future, and, secondly, may it be sustained as a levy necessary to the maintenance of a cash balance sufficient to operate on a cash basis? These will be considered in the order stated.

The president of the board of education, the chairman of the building and grounds committee, and the superintendent of buildings and grounds, an employee of the board, testified as to certain contemplated projects. Extracts from the minutes of the board for meetings held

prior to the making of the levy, were introduced in support of the defense that plans were under way which called for expenditure of money raised by taxation. The substance of such evidence was that for two or more years prior to 1941, the board of education had contemplated certain building improvements. The high-school building in Lake Forest, erected in 1933-35, had never been completed. Some of the rooms had not been finished, elevators had not been installed, an athletic field had not been purchased and equipment for it had not been acquired. The high-school facilities at the Highland Park high school needed improvement. The erection of a new gymnasium and the conversion of the old building to other purposes had been considered. The plan discussed involved a new building at a cost of $300,000 to $500,000, and an expenditure of $50,000 on the old building.

The records of the board show that some part of these plans was before the board, but all action seems to have been in a preliminary stage for the purpose of obtaining more definite information. The superintendent was asked to prepare sketches and to outline his ideas as to the proposed changes. The evidence which is the nearest an approach to definite action relates to the remodeling of the old gymnasium at Highland Park, and, as to it, the chairman of the building and grounds committee stated that the whole project was dependent upon the availability of materials. The inference is that the remodeling of the old gymnasium was dependent on the erection of a new gymnasium, and there is no evidence of any such project being planned for the immediate future. No engineer had been consulted in reference to any of such projects. It is said conditions brought on by the World War necessarily delayed action. No doubt war priorities and scarcity of materials and labor would prevent the completion of plans, but the evidence here shows that the plans had not progressed to that definite stage where it could be determined

what materials would be necessary. Under such circumstances, it can hardly be said that war priorities created conditions that prevented the completion of certain projects.

Another fact which throws light on the nebulous character of these proposed plans is that the board of education did not list any of such items in its budget and appropriation ordinance for the year beginning July 1, 1941. In the supplemental ordinance it added to estimated expenditures $10,000 for the enlargement of the gymnasium locker room at the Highland Park high school, and $4000 for asphalt surfacing of four tennis courts at one of the athletic fields. Although some of the discussed projects were of a character similar to the ones mentioned, the board of education did not specify them in the budget ordinance. The evidence introduced does not serve to establish that which was omitted from the budget ordinance.

The law is well settled that questions as to what projects may be erected and the amount to be raised for such purposes are committed to the discretion of the governing body of the municipality but it is not authorized to make levies to accumulate a fund for some project to be developed at some indefinite future time. (*People ex rel. Schaefer* v. *New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518; *People ex rel. Bracher* v. *Millard,* 307 Ill. 556.) Levies for such indefinite purposes are condemned for the reason that the unnecessary accumulation of money in the public treasury is unjust to the people, in that it deprives them of the use of their money for a period of time, and, in that the accumulation of money in excess of needs, furnishes a temptation to those in charge to expend public funds recklessly and more than is needed. (*People ex rel. Batman* v. *Illinois Central Railroad Co.* 366 Ill. 408.) The contention that the board of education was acting within its discretionary powers in planning for certain projects for the future can not be sustained.

Appellant does not question the power of a board of education to levy taxes sufficient in amount to accumulate a fund so that it may operate on a cash basis. He contends that, in this case, it is conclusively shown that the levy was not made for the purpose of placing the district upon a cash basis but that the sole purpose was to create a fund for indefinite and uncertain projects that might be undertaken in the future. If such was the purpose, then the levy is condemned by the principle announced in *People ex rel. Clark* v. *Baltimore and Ohio Southwestern Railway Co.* 353 Ill. 492, which is that "A tax levy largely in excess of the amount required for the purpose for which it is made, with the intention of creating a surplus to be used for another purpose, is not a legal tax levy even though the rate is within the limit fixed by statute."

We agree with appellant's contention. As noted, the district at the time of the levy had assets available for the fiscal year in an amount almost twice the estimated expenditures. This did not include any part of the levy in question. The only explanation for the levy of 1941 was to raise funds to be used in the payment of the indefinite and uncertain items heretofore mentioned. It is not claimed that the levy was made to pay any item of estimated expenditures included in the budget ordinance. The levy can not be sustained.

On the issues submitted, we are not required to consider whether the budget ordinance adopted in 1941 met the requirements of the Municipal Budget Law.

For the reasons indicated, the county court of Lake county erred in overruling appellant's objection involved in this appeal, and the judgment of that court is reversed and the cause remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*