*In re* APPLICATION OF THE PEOPLE *ex rel.* JACK L. ANDERSON, County Treasurer and *ex officio* County Collector of Lake County (Jack L. Anderson, Petitioner-Appellee, v. A.S. Industrial Properties *et al.*, Objectors-Appellants).

Second District   No. 2—95—0480

Opinion filed May 8, 1996.

Peter J. Nordigan and Donald M. Lonchar, Jr., both of Brydges, Riseborough, Peterson, Franke & Morris, of Waukegan, for appellants.

Michael J. Waller, State's Attorney, of Waukegan (Ares G. Dalianis, Assistant State's Attorney, of counsel), for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Objectors, A.S. Industrial Properties *et al.* (Objectors), appeal the trial court's order, finding that the petitioner, the treasurer and collector of Lake County (Lake County), did not abuse his discretion in making a property tax levy for the general corporate fund (General Fund) for the fiscal year 1989. Objectors contend on appeal that there was no need for Lake County to levy taxes for this period and that the taxes levied and collected resulted in an unreasonable and unneeded accumulation of funds in the General Fund. We affirm.

The Objectors are 35 entities and individuals who paid their fiscal year 1989 real property taxes under protest in 1990. The Objectors filed objections to a variety of county, township, and fire protection district funds. The objections were settled by agreement of the parties, with the exception of the General Fund. The circuit court of Lake County held a hearing on the objection to the General Fund on March 2, 1995. The Objectors sought a refund of fiscal year 1989 real property taxes of $266,942.18. The Objectors' basis for the General Fund objection is that "the amount levied and rate extended *** is excessive as shown by the Annual Financial Report of the County Auditor of Lake County, Illinois for the fiscal year ending November 30, 1989."

The Lake County comprehensive annual financial report for the 1989 year contains the following information with respect to the General Fund for the fiscal year 1989 (FY1989):

### General Fund

Revenues received during FY1989:

| | |
|---|---|
| Property taxes, net (collected 1988 taxes) | $ 2,142,813 |
| All other sources | 35,795,403 |

| Total revenues for FY1989 | 37,938,216 |
| December 1, 1988, beginning balance | 18,163,672 |
| Total funds available for FY1989 | 56,101,888 |
| | |
| Expenditures for FY1989: | 38,053,933 |

On September 27, 1987, Lake County transferred $1.2 million from the General Fund into a separate fund named "LCPBC Sixth Floor Shell" (Sixth Floor Shell). Raymond A. Amadei, the director of finance for Lake County, testified that the purpose of the transfer was to assist the Lake County public building commission in completing the fifth and sixth floors of the county jail. He testified that the Lake County public building commission had cash flow problems and that the money was transferred to pay the cost of the completion of the county jail in the event that the Lake County public building commission did not have the cash flow to do so.

On September 30, 1987, Lake County entered into an intergovernmental agreement with the Lake County public building commission to provide funds for completing the jail complex by loaning the $1.2 million as an advance to the Lake County public building commission to be repaid without interest within five years. That agreement stated in part:

"If the Commission [Lake County public building commission] experiences a shortfall in finances in completing the balance of the planned construction, it shall request that the funds set aside by the County for that purpose, not to exceed $1,200,000, be advanced to the Commission, said advance to be repaid from the Commission's major repairs and replacement account, without interest, as the Commission's cash floor in that account permits. It is projected that said reimbursement will not exceed 5 years."

Amadei testified that the jail was completed and that none of the funds from the Sixth Floor Shell was ever expended for the completion of the fifth and sixth floors of the jail. Amadei also stated that the $1.2 million was never returned to the General Fund.

Harold Callahan testified that he was the chairman of the Lake County public building commission from June 1975 to September 1991. He testified that when Magalis, the county administrator, told him that the Lake County public building commission had to repay the $1.2 million, he lost all interest in receiving the funds.

On November 10, 1987, Lake County made a further transfer of $3,550,749 from the General Fund into a separate account named the "Capital Improvements Program" to provide reserves for an eventual capital improvements program. The resolution which authorized the transfer stated that the purpose of the transfer was "to provide beginning cash reserves to eventually implement said capital improve-

ment program." Amadei testified that the budget in 1988 for the capital improvements program was $550,749. He stated, however, that the $550,749, which was appropriated, was never spent in 1988.

Amadei further testified that the Sixth Floor Shell and the capital improvements program did not receive their funds from a levy of real property taxes.

The circuit court of Lake County, in an order entered March 15, 1995, found that Lake County did not abuse its discretion in making a property tax levy for the General Fund for the fiscal year 1989.

The Objectors contend on appeal that the circuit court erred in its order. Specifically, Objectors argue that there was no need for Lake County to levy taxes for this period and that the taxes levied and collected resulted in an unreasonable and unneeded accumulation of funds in the General Fund.

■ A taxing body has broad discretion in estimating the amounts necessary to carry out its lawful objectives. *In re Application of County Collector*, 41 Ill. App. 3d 106, 109 (1976). The presumption is that the taxing body has properly discharged its duty and has not abused its discretion in making the levy (*People ex rel. Sweet v. Central Illinois Public Service Co.*, 48 Ill. 2d 145, 157 (1971)), and the burden is on the objectors to overcome this presumption and show a clear abuse of discretion (*In re County Collector*, 41 Ill. App. 3d at 109). Unnecessary accumulation of money in the public treasury is against the policy of the law, and a levy or tax rate which results in such an unnecessary accumulation is illegal. *In re Application of O'Connor*, 80 Ill. App. 3d 354, 355 (1980).

Our supreme court's decision in *Central Illinois Public Service Co. v. Miller*, 42 Ill. 2d 542 (1969), offers us guidance as to the proper method for analyzing excess accumulations of money. In *Miller*, the court added the fund balance at the beginning of the fiscal year to the taxes extended for the prior year, giving it the total funds available for the fiscal year. The sum of this computation was then divided by the average annual expenditure from the fund for the previous three fiscal years. Using this method, the court concluded that, where the computed sum of funds available was 2.84 times the annual average expenditure for the past three fiscal years and 3.24 times the amount expended in the last previous fiscal year, any further tax levy would result in an illegal excess accumulation. Subsequent to *Miller*, the Appellate Court, Third District, held in *In re O'Connor* that an illegal accumulation had occurred where a town fund was 2.9 times the previous year's expenditures and 2.9 times the average expenditure of the past three fiscal years.

In the present case, the record indicates that the total funds

available for the General Fund for FY1989 were $56,101,888, the annual expenditure from the General Fund for the FY1989 was $38,053,933, and the average annual expenditure from the General Fund for the previous three fiscal years (1987, 1988, and 1989) was $34,076,936. Under the *Miller* analysis, the expenditure multipliers for the General Fund for one and three years, respectively, are as follows:

1989 expenditure multiplier = $\dfrac{\text{Total funds available for FY1989}}{\text{Expenditures made during FY1989}}$

= $\dfrac{\$56,101,888}{38,053,933}$

= 1.47 (Multiplier)

Three-year expenditure multiplier = $\dfrac{\text{Total funds available for FY1989}}{\text{Average of expenditures for periods ending November 30, 1987, 1988, and 1989}}$

= $\dfrac{\$56,101,888}{34,076,936}$

= 1.65 (Multiplier)

As illustrated above, the General Fund was 1.47 times the previous year's expenditures and 1.65 times the average expenditure of the past three fiscal years.

The Objectors point out that by the end of November 1989, the money that was transferred from the General Fund into the Sixth Floor Shell ($1.2 million) and the capital improvements program ($3,550,749) had grown to $5,492,296. Objectors claim that the $5,492,296 should be constructively transferred back to the General Fund for purposes of determining whether there was an unlawful accumulation of money in the General Fund. The Objectors claim these transfers were unlawful under *People ex rel. Leaf v. Roth*, 389 Ill. 287 (1945).

In *Roth*, the court held invalid a levy of taxes to accumulate funds for a project to be developed at some future time. The court stated:

> "The law is well settled that questions as to what projects may be erected and the amount to be raised for such purposes are committed to the discretion of the governing body of the municipality but it is not authorized to make levies to accumulate a fund for some project to be developed at some indefinite future time. [Citations.] Levies for such indefinite purposes are condemned for the reason that the unnecessary accumulation of money in the public

treasury is unjust to the people, in that it deprives them of the use of their money for a period of time, and, in that the accumulation of money in excess of needs, furnishes a temptation to those in charge to expend public funds recklessly and more than is needed." *Roth*, 389 Ill. at 291.

According to the Objectors, Lake County transferred the money to the Sixth Floor Shell in an attempt to hide and accumulate funds from the taxpayers. The Objectors point to the following in support of their argument: From 1987, the year the money was transferred to the Sixth Floor Shell, to November 1992, no funds were ever expended for the completion of the jail facility; the jail facility was completed without ever using the funds in the Sixth Floor Shell; and Harold Callahan, the former chairman of the Lake County public building commission, testified that, when he learned that the $1.2 million had to be repaid, he lost all interest in obtaining the funds. Therefore, the Objectors argue, the funds should be constructively transferred back to the General Fund for purposes of determining whether there was an unlawful accumulation of money in the General Fund.

In terms of the capital improvements program, the Objectors argue that the $3,550,749 should be constructively transferred back to the General Fund for purposes of determining whether there was an unlawful accumulation of money in the General Fund because the resolution authorizing the transfer stated that the purpose of the transfer was "to provide beginning cash reserves to *eventually implement* said capital improvement program" (emphasis added), and the resolution admits that no purpose was specified for the expenditure from the capital improvements program unless and until it was approved by further resolution of the Lake County board.

■ We find that, even if we were to constructively transfer back the $5,492,296 to the General Fund, the amount available in the General Fund at that time would be 1.61 times the previous year's expenditures and 1.80 times the average expenditure of the past three fiscal years. These multipliers fall well below what *Miller*, and the cases which followed *Miller*, found to be unlawful accumulations. Conditions affecting financial needs vary from year to year, and it is the duty of the taxing body to anticipate such changes and to provide for its needs in light of the same. *In re County Collector*, 41 Ill. App. 3d at 110. As previously stated, the presumption is that the taxing body has properly discharged its duty and has not abused its discretion in making the levy (*Sweet*, 48 Ill. 2d at 157), and the burden is on the objectors to overcome this presumption and show a clear abuse of discretion (*In re County Collector*, 41 Ill. App. 3d at 109). The Objectors in the present case failed to meet their burden.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BOWMAN and RATHJE, JJ., concur.