2023 IL App (3d) 210606

Opinion filed February 23, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| 110 LARKIN, LLC,* *et al.* | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiffs-Appellees, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| STEVE WEBER, Will County | ) | Appeal No. 3-21-0606 |
| Treasurer and *ex-officio* Will | ) | Circuit No. 18-TX-251 |
| County Collector, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | Honorable |
| (Woodridge Park District, Intervenor- | ) | John C. Anderson, |
| Appellant). | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court, with opinion.
Justices Brennan and Albrecht concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        In a tax rate objection complaint, plaintiffs alleged that the 2017 levy imposed by the

intervenor, Woodridge Park District (WPD), was unlawful because, at the time of the 2017 levy,

WPD had an illegal excess accumulation in its corporate fund. Plaintiffs and WPD filed cross-

motions for summary judgment. The circuit court denied WPD's motion for summary judgment

_____
*See Appendix A for a list of all plaintiffs.

and granted plaintiffs' motion, finding an excess accumulation of funds in WPD's corporate fund, which was a sub-fund of WPD's general fund, so that the 2017 levy at issue was unlawful. WPD appealed, arguing that there was no excess accumulation of funds to support the court's finding that the 2017 levy was unlawful. We reverse.

¶ 2                                    I. BACKGROUND

¶ 3        In Illinois, park districts have the power to levy and collect taxes on taxable property in their districts for "corporate purposes," pursuant to sections 5-1 and 5-3 of the Park District Code (70 ILCS 1205/5-1, 5-3 (West 2016)). On December 12, 2017, WPD adopted a levy ordinance in accordance with sections 5-1 and 5-3 of the Park District Code for its general fund.

¶ 4        On November 16, 2018, plaintiffs filed a tax rate objection complaint. The tax districts in Will County whose 2017 levies were objected to included WPD. In the complaint, plaintiffs alleged that it was a taxpayer who owned, had an interest in, or had the obligation of paying real estate taxes on parcels of real property in Will County. Plaintiffs sought a refund, plus interest, for payment of the 2017 real estate taxes at issue "by reason of excessive and illegal assessments, levies and taxes extended against such parcels."

¶ 5        Specifically, plaintiffs alleged WPD levied for "corporate purposes" $3,910,740 for 2017. Plaintiffs contended the annual audit report for WPD showed a balance in WPD's corporate fund at the conclusion of the 2017 fiscal year of $1,685,964, with an additional $3,558,158 for 2016 taxes that had not yet been received, for total available funds of $5,966,101. (Plaintiffs subsequently modified this figure to contend that WPD had $3,780,072 in 2016 taxes, so that the total funds available in WPD's corporate fund was $6,188,012.) Plaintiffs contended that WPD's average expenditures for "corporate purposes" for the three preceding fiscal years (2015, 2016, and 2017) was $1,816,106, making the assets within WPD's corporate fund 3.5 times the average

2

annual expenditure of those funds. For that reason, plaintiffs claimed there was an excess accumulation of funds available and, therefore, the 2017 levy was invalid.

¶ 6                                    A. WPD's Motion for Summary Judgment

¶ 7        WPD filed a motion for summary judgment, arguing its attached audit documents demonstrated that there was not an excess accumulation of funds in its general fund at the time of the 2017 tax levy. WPD argued that plaintiffs used incorrect figures to support its tax objection complaint. Specifically, WPD contended that plaintiffs were using information related only to WPD's corporate sub-fund, whereas the fund balances and expenditures related to its general fund supported the 2017 levy. WPD's general fund consisted of three sub-funds: (1) corporate, (2) capital replacement, and (3) capital development. WPD argued that plaintiffs miscalculated the ratio of funds available to the average annual expenditure of funds by "mixing and matching figures from the General Fund and the 'corporate' sub-fund."

¶ 8        WPD further indicated it maintained its general fund, under which it maintained sub-funds for administrative purposes "to allocate revenues and expenses separate and distinct between its corporate purposes, building repairs and building improvements in accordance with 70 ILCS 1205/5-1." Each of the sub-funds was funded by the single levy at issue. Attaching supporting documentation to its motion, WPD contended it had submitted a levy of $3,910,740 for its general fund ($2,190,00 for administrative, maintenance, and planning expenses; $602,217 for capital replacement expenses; and $1,118,523 for capital development expenses). WPD argued that under section 5-1 of the Park District Code, it was "well within its rights to levy for corporate purposes, building repairs and building improvements." WPD contended that when its general fund was viewed as a whole, there was no excess accumulation of funds and, therefore, the 2017 levy at issue was lawful.

3

¶ 9                                                            B. Plaintiffs' Motion for Summary Judgment

¶ 10        Plaintiffs also filed a motion for summary judgment. Plaintiffs contended its objection was not in relation to WPD's general fund but, rather, was against WPD's corporate sub-fund of its general fund. Plaintiffs argued that at the time of WPD's 2017 levy, WPD had in its corporate sub-fund, 3.4 times the average annual expenses of the prior three years. Plaintiffs argued that because it made a *prima facie* case of an excess accumulation of funds, WPD was required to, but had failed to, produce evidence of a need for the accumulation of funds in the corporate sub-fund.

¶ 11        In response, WPD contended that plaintiffs' arguments in relation to WPD's corporate sub-fund artificially constructed an excess accumulation claim. WPD argued that plaintiffs' tax rate objection was against the 2017 levy and the funds in relation to that levy were in WPD's general fund, not solely within the corporate sub-fund. WPD attached to its response the affidavit of Mike Adams, the executive director of WPD. Adams averred that WPD maintained the following funds: "General, Recreation, Debt Service, Social Security and IMRF, Public Liability Insurance, Audit, Special Recreation, Jubilee, Restricted Contributions and Working Cash." Adams further averred that within WPD's "General Fund," WPD maintained three sub-funds: corporate, capital replacement and capital development. The Will County and Du Page County clerks extended the levy at issue under a title of the corporate fund; the funds received from the levy at issue were deposited into WPD's general fund and then allocated among its three sub-funds; and the total amount received as the result of the 2017 levy in relation to the General Fund from Will and Du Page Counties was $3,935,331 and was allocated among the three sub-funds within its general fund—$2,696,198 to its corporate sub-fund, $600,039 to its capital replacement sub-fund, and $639,094 to its capital development sub-fund.

4

¶ 12         C. Plaintiffs' Response to WPD's Motion/Reply in Support of Plaintiffs' Motion

¶ 13         In response to WPD's motion for summary judgment and in support of its own motion, plaintiffs argued that tax rate objections are analyzed on a fund-by-fund basis and WPD's general fund was not the subject of their objection. Plaintiffs contended that, based on WPD's own documents, plaintiffs established an excess accumulation in the corporate sub-fund.

¶ 14         D. Trial Court's Ruling

¶ 15         On May 17, 2021, the circuit court entered a written order indicating that plaintiffs had filed a single objection to the corporate sub-fund of WPD's general fund and that there had been no objection against WPD's general fund. The circuit court found that in 2017 there was an illegal excess accumulation in WPD's corporate sub-fund. The circuit court noted that plaintiffs stipulated to, and accepted, WPD's calculation that the district levied taxes in the amount of $86,657.71 on plaintiffs' property. For those reasons, the circuit court granted plaintiffs' motion for summary judgment, ordered a refund to plaintiffs in the amount of $86,657.71 (with statutory interest), and denied WPD's motion for summary judgment.

¶ 16         WPD filed a motion to reconsider, which the trial court denied. WPD appealed.

¶ 17         II. ANALYSIS

¶ 18         On appeal, WPD argues that the trial court erred in denying its motion for summary judgment and granting plaintiffs' motion for summary judgment where there was no excess accumulation of funds related to the 2017 levy at issue. Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Where the parties have filed cross-motions for summary judgment, as a

general rule, they agree that there are no issues of material fact and that the cause can be decided as a matter of law. *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 36 (2002). The parties in the case at bar do not dispute the material facts; thus, this case can be resolved as a matter of law. As such, the standard of review is *de novo*.

¶ 19 The crux of the issue on appeal is whether the trial court erred by determining that there was an excess accumulation in one of three sub-funds within WPD's General Fund, rather than examining the entirety of the General Fund to make an excess accumulation determination.

¶ 20 Section 5-1 of the Park District Code provides:

"Each Park District has the power to levy and collect taxes on all the taxable property in the district for all corporate purposes. The commissioners may accumulate funds for the purposes of building repairs and improvements and may annually levy taxes for such purposes in excess of current requirements for its other purposes but subject to the tax rate limitation as herein provided.

All general taxes proposed by the board to be levied upon the taxable property within the district shall be levied by ordinance." 70 ILCS 1205/5-1 (West 2016).

¶ 21 Section 5-3 of the Park District Code provides:

"Any park district may levy and collect annually an additional tax *** for all corporate purposes, which tax shall be levied and collected in like manner as the general taxes for such district. Such tax shall be in addition to all other taxes authorized by law to be levied and collected by such district and shall not be included within any limitation of rate contained in this code or any other law, but shall be excluded therefrom and be in addition thereto and in excess thereof.

6

No such tax shall be levied in any such district until the question of levying such tax has first been submitted to the voters of such district at an election held in such district, and has been approved by a majority of such voters voting thereon. Notice of the referendum shall be given and such election shall be conducted in the manner provided by the general election law." *Id.* § 5-3.

¶ 22    A taxing body has wide discretion in estimating the amount of money necessary to carry out its lawful objectives, and there is a presumption a taxing body did not abuse its discretion in making its property tax levy. *In re Application of the People ex rel. Anderson*, 279 Ill. App. 3d 593, 596 (1996); *In re Application of Rosewell*, 159 Ill. 2d 393, 402 (1994) (abuse of discretion is the proper standard of review of a taxing body's estimates in passing their appropriation and levy ordinances as part of their budgets). To rebut that presumption, an objector must make a *prima facie* case that a levy for a fund created an unlawful accumulation of assets. *Anderson*, 279 Ill. App. 3d at 596.

¶ 23    "It has long been the fixed policy in this State not to permit the unnecessary accumulation of monies in the public treasury." *Central Illinois Public Service Co. v. Miller*, 42 Ill. 2d 542, 543 (1969). Although taxing authorities have reasonable discretion in fixing the amount needed to be raised, courts will interfere to prevent a clear abuse of those discretionary powers. *Id.* at 543-44. "Unnecessary accumulation of money in the public treasury is against the policy of the law, and a levy or tax rate which results in such an unnecessary accumulation is illegal." *Anderson*, 279 Ill. App. 3d at 596 (citing *In re Application of O'Connor*, 80 Ill. App. 3d 354, 355 (1980)).

¶ 24    "[A] tax objector can meet its burden to show an excessive accumulation by presenting evidence that the accumulation in the fund exceeds two to three times the average annual expenditures from the fund." *People ex rel. Toynton v. Commonwealth Edison Co.*, 285 Ill. App.

7

3d 357, 362 (1996). Where tax objectors demonstrate an accumulation of assets that exceeds two to three times a taxing body's foreseeable expenditures, the taxing body must be given an opportunity to present evidence as to why it needed to make an additional levy. *Id.* at 363.

¶ 25    Excess accumulation of funds claims are analyzed pursuant to the framework established in *Miller*, wherein our supreme court determined the total amount of available funds in the fund of a taxing body at the start of a fiscal year was calculated by adding the fund's balance at the beginning of the fiscal year and the amount of taxes that remained to be collected from the prior year's levy for that fund. *Miller*, 42 Ill. 2d at 543. The total amount of available funds in *Miller* ($305,477.18) was then divided by the average annual expenditures from the fund for the previous three fiscal years ($107,368.60) (*Miller* ratio). *Id.* Our supreme court in *Miller* held that having funds available for general assistance purposes in an amount that was 2.84 times the three-year average annual expenditure and 3.24 times the prior year's expenditure was an unlawful excess accumulation and the levy at issue was deemed unlawful. *Id.* at 543-44. The *Miller* court cited *People ex rel. Leaf v. Roth*, 389 Ill. 287 (1945), which previously declared a levy illegal where the amount accumulated was almost twice the estimated expenditures, and *People ex rel. Schaefer v. New York*, *Chicago & St. Louis R.R. Co.*, 353 Ill. 518 (1933), which declared a levy illegal where the cash on hand was three times the yearly expenses. *Miller*, 42 Ill. 2d at 543-44. In finding that there was an unlawful excess accumulation, the *Miller* court noted that there was nothing in the record indicating any unusual, anticipated call upon the fund or that the levy was for any other purpose than the accumulation of monies in the fund. *Id.* at 544. The *Miller* court, therefore, concluded the levy was not justified and was an abuse of discretion. *Id.* at 544-45.

¶ 26    In *Anderson*, the Second District of the Illinois Appellate Court held that the plaintiffs failed to meet their burden of making a *prima facie* case of an excess accumulation of funds where

8

the total funds available were only 1.8 times the average annual expenditures for the past three years and 1.61 times the prior year's expenditure, which was well below what was found to be excessive in *Miller*. *Anderson*, 279 Ill. App. 3d at 596-98. Accordingly, in *Anderson*, the tax objectors failed to meet their burden of showing an excessive accumulation. *Id.* at 597-98.

¶ 27 Here, WPD had the power to levy and collect taxes for "all corporate purposes." See 70 ILCS 120/5-1 (West 2016). Black's Law Dictionary defines "corporate purpose" in this context as follows:

"In reference to municipal corporations, and especially to their powers of taxation, a 'corporate purpose' is one which shall promote the general prosperity and the welfare of the municipality; or a purpose necessary or proper to carry into effect the object of the creation of the corporate body or one which is germane to the general scope of the objects for which the corporation was created or has a legitimate connection with those objects and a manifest relation thereto." Black's Law Dictionary 340 (6th ed. 1990).

¶ 28 Thus, "corporate purpose" is a broad concept, including all direct and collateral purposes that serve the corporate body's objectives. In this case, plaintiffs' argument in support of its tax objection to WPD's 2017 levy was that there was an excess accumulation of funds in the corporate sub-fund of WPD's general fund so that the levy was unnecessary and, therefore, unlawful. Plaintiffs contended that because the corporate sub-fund was the only fund that was specifically labeled "corporate," it was the only fund used for corporate purposes. However, the definition of corporate purposes is broad. WPD could simply have labeled its sub-funds as "corporate fund No. 1-administrative," "corporate fund No. 2-capital replacement," and "corporate fund No. 3-capital development," and plaintiffs would have no argument regarding an excess accumulation of funds in relation to WPD's singular levy for corporate purposes. Further, nothing in the law

9

required WPD to create the sub-funds; WPD could have maintained a single general fund. Again, plaintiffs' logic dissolves. Plaintiffs' argument is based on the label "corporate" on one of the sub-funds, which has absolutely no legal import or impact. Plaintiffs then use that label to separate the sub-fund from the rest, which then skews the *Miller* ratio by comparing mathematical apples to oranges. This is why plaintiffs' logic is faulty. There is no argument or indication that the total funds accumulated in WPD's general fund and spent from each sub-fund were used for anything other than appropriate corporate purposes.

¶ 29    We acknowledge that a fund-by-fund analysis is preferable, even if the monies in various funds are to some extent transferable. *Alpha Gamma Rho Alumni v. People ex rel. Boylan*, 322 Ill. App. 3d 310, 315 (2001). However, in this case, there is no indication that there were three separate funds with corresponding separate levies; rather, there was only one fund, divided into three sub-funds for administrative reasons, with a single levy by a single taxing district. *Cf. id.* at 315 (rejecting tax objector's argument that excess accumulation objections against several taxing districts should be analyzed across multiple funds rather than on a fund-by-fund basis); *O'Connor* 80 Ill. App. 3d at 355-56 (applying the *Miller* test on a fund-by-fund basis to four funds in determining whether there was an excess accumulation of funds where each of the four funds had a separate levy associated with it).

¶ 30    As is required by law, plaintiffs' tax rate objection was filed against the specific 2017 levy at issue, not against a particular fund or sub-fund. See 35 ILCS 200/23-15(b)(1) ("[t]he court, sitting without a jury, shall hear and determine all objections specified to the taxes, assessments, or levies in question"). In looking at the balance of the entire general fund at the time of the 2017 levy, and applying the *Miller* calculation, we conclude that there was no excessive accumulation of funds. WPD's general fund balance was $6,312,557 as of April 30, 2017. The property taxes

10

yet to be received from the 2016 levy for the general fund was $3,780,072. Thus, the funds available were $10,092,629. The three-year average annual expenditures from the general fund were $9,152,145. Thus, the *Miller* ratio was approximately 1.1. WPD's calculation of the *Miller* ratio is the correct calculation. The tax levy at issue funds all three sub-funds, which are divided for administrative purposes only. If each sub-fund had its own corresponding levy, then the approach set forth in *Alpha Gamma* and *O'Connor* would be the correct approach. However, they do not. The correct *Miller* calculation compares all the funds available (the funds on hand at the beginning of the fiscal year together with the funds due from the previous year's levy) in all three sub-funds that make up the general fund to the average expenditures from all three sub-funds over the past three years. That calculation yields a *Miller* ratio of approximately 1.1. Simply put, WPD is not accumulating excess funds beyond what it has historically been spending to run the park district. Therefore, the trial court erred in granting plaintiffs' motion for summary judgment and denying WPD's motion for summary judgment.

¶ 31                                  III. CONCLUSION

¶ 32          The judgment of the circuit court of Will County is reversed.

¶ 33          Reversed.

110 LARKIN LLC

**1355 LAKEVIEW DRIVE LLC**

18500 NORTH CREEK DRIVE LLC

**18520 81ST TP LLC**

190TH STREET REAL ESTATE LLC

**24111 W 103RD ST LLC**

253 EAST BRUCE ST LLC

**2675 SYCAMORE RD INC**

2700 ELLIS RD ACQUISITION CORP. C/O NORTHER BUILDERS

**2700 W HAVE ROAD**

3540 EAGLE NEST DRIVE LLC

**494 BOUGHTON RD LLC**

50/30 ACQUISITION LLC

**916-918 W JEFFERSON LLC**

AEB REAL ESTATE INC

**AFFILIATED REALTY & MANAGEMENT COMPANY**

ALAIMO, JOSEPH JANET TR 91856

**ALLEGIANCE COMMUNITY BANK**

ALLEGRO, MARIO A.

**ALML COMRCL PROPERTIES TWO LLC**

AMB INSTITUTIONAL ALLIANCE

**AMERICAN MULTI-CINEMA, INC.**

AMERICAN TECH PUBLISHERS INC.

**ANDERSON COPPER & BRASS CO.**

ARC CAFEUSA001 LLC

**ART VAN-MW**

ASHLEY FURNITURE IND

**ASHLEY REAL ESTATE LLC**

ASHLEY REAL ESTATE LLC

**AT NEW LENOX IL-INLINE LLC**

AT NEW LENOX IL-OUTLOTS LLC

**AT WHEATLAND NAPERVILLE IL LLC**

BANK FINANCIAL

**BANK OF AMERICA**

BARRIOS, BALDOMERO

**BASSWOOD 2001 LLC ET AL**

BIMBA MANUFACTURING CO.

BLOCK INDUSTRIAL CNTR I

BOLINGBROOK EQUITY 1 LP

BOLINGBROOK MENARDS PLAZA

BOLINGBROOK PLAZA

BOLINGBROOK PROP PRTNRS LLC

BRE ALPHA INDUSTRIAL PROPERTY

BRE THRONE FRANKFORT XING LLC

BREIT INDUSTRIAL HS PROPERTY

BROADSTONE EWD ILLINOIS LLC

BURCAR, CONSTANCE E DEC TR

BURKE, DR. MICHAEL T.

BURRIS WEST BUILDING LLC

BURTON PLACE LP

BYPASS TRUST

CABOT ACQUISITION, LLC

CABOT IV IL 1B04 LLC

CAPITOL RESOURCE DEVELOPMENT

CAPUTO PAUL V SR 2008 TRUST

CAPUTO'S FRESH MARKETS

CATELLUS DEVELOPMENT CO.

CATELLUS FINANCE I, LLC

CATELLUS OPERATING LTD. P.

CATON CROSSING TOWN SQUARE

CBOCS WEST, INC.

CENTERPOINT INTERMODAL, LLC

CENTERPOINT JOLIET LLC

CENTERPOINT JOLIET TERMINAL

CENTERPOINT PROPERTIES TR.

CENTERPOINT TERMINAL RAIL

CF LLC

CHANCEY, DAVID CHRISTINA

CHERRY HILL JB LLC

CHICAGO TITLE LAND TRUST CO TR 28305

COLLISION CENTERS OF AMERICA

COLUMBIA RETAIL SHOREWOOD XING

COMMONWEALTH EDISON CO. (CHANNAHON TOWNSHIP)

COMMONWEALTH EDISON CO. (CRETE TOWNSHIP)

COMMONWEALTH EDISON CO. (CUSTER TOWNSHIP)

COMMONWEALTH EDISON CO. (DU PAGE TOWNSHIP)

COMMONWEALTH EDISON CO. (FLORENCE TOWNSHIP)

COMMONWEALTH EDISON CO. (FRANKFORT TOWNSHIP)

COMMONWEALTH EDISON CO. (GREEN GARDEN TOWNSHIP)

COMMONWEALTH EDISON CO. (HOMER TOWNSHIP)

COMMONWEALTH EDISON CO. (JACKSON TOWNSHIP)

COMMONWEALTH EDISON CO. (JOLIET TOWNSHIP)

COMMONWEALTH EDISON CO. (LOCKPORT TOWNSHIP)

COMMONWEALTH EDISON CO. (MANHATTAN TOWNSHIP)

COMMONWEALTH EDISON CO. (MONEE TOWNSHIP)

COMMONWEALTH EDISON CO. (NEW LENOX TOWNSHIP)

COMMONWEALTH EDISON CO. (PEOTONE TOWNSHIP)

COMMONWEALTH EDISON CO. (PLAINFIELD TOWNSHIP)

COMMONWEALTH EDISON CO. (REED TOWNSHIP)

COMMONWEALTH EDISON CO. (TROY TOWNSHIP)

COMMONWEALTH EDISON CO. (WASHINGTON TOWNSHIP)

COMMONWEALTH EDISON CO. (WESLEY & WILMINGTON TWSHPS)

COMMONWEALTH EDISON CO. (WHEATLAND TOWNSHIP)

COMMONWEALTH EDISON CO. (WILL TOWNSHIP)

COMMONWEALTH EDISON CO. (WILTON TOWNSHIP)

COUNTRYSIDE RIVER APTS (INLAND)

CROSSROADS BUSINESS PARK OWNERS

CUBESMART #609 JOLIET

CUBESMART #615 PLAINFIELD

CUBESMART #675

CUBESMART #867

CVS CAREMARK 2

DEER CREEK GOLF LLC

DELANEY, MICHAEL J

DG CHANNAHON EAMES LLC

DHILLON SAWAANJIT S

DHILLON, SAWAANJIT

DINOLFO, CHARLES

DOLLAR TREE DISTRIBUTION, INC.

DONATI CHET 82067

DREMCO, INC.

**DREMONAS, JAMES**

DUGAN FINANCING LLC

**DUGAN REALTY LLC**

DUKE REALTY CORPORATION

**DUKE REALTY LP**

DUKE SECURED FINANCING-1

**EATMAN, MR. LOREN**

EBL LEASING LLC

**ECLIPSE KENSINGTON LARKIN AVE**

EDWARD HEALTH VENTURES

**EKDK MOKENA LLC**

ELLIOTT RE HOLDING CO LLC

**ENBRIDGE PIPELINE (S LIGHTS) LLC**

ESSINGTON PROPERTIES

**ESSINGTON SHOPPES, LLC**

ESTANCIA SIX LLC

**EXECUTIVE PROPERTIES**

F9 PROPERTIES LLC

**FAH SHOREWOOD LLC**

FIRST AMERICAN BANK

**FIRST STATE BANK**

FLEX CAPITAL LLC

**FLEX CAPITAL LLC**

FOUNTAIN SQUARE LLC

**FRANK COSTA II LLC**

FRASCA DONALD TRUST - FRASCA ARLYNE TRUST

**G & W PARTNERS C/O G BERKOWITZ**

GAP VII GB ROMEOVILLE LLC

**GARBER, ROBERT**

GC NET LEASE JOLIET INVST LLC - CATERPILLAR

**GEORGE, LARRY - GEORGE, ROSEMARY**

GJ 1437, LLC

**GJN, LLC**

GLL PROPERTIES

**GREENCORE USA CPG PARTNERS**

HAMPTON MERCURY INV CL, LLC

15

HARBOR TOOL BUILDING LLC

HARLEM 193RD ST. PLAZA

HARRIS BANK TR 2508

HARRIS NA (MADIGAN)

HART I55 INDUSTRIAL, LLC

HARTZ CONSTRUCTION CO., INC.

HEIDNER/YORMAK PROP II LLC

HENKEL, PATRICK W DEC TR

HERITAGE TRUST CO TR 91-4367

HICKORY CREEK MARKET PLACE (INLAND)

HIGHLAND CORPORATE CENTER

HOME RUN INN

HP 55-80 LLC

HSRE DMG JOLIET LLC

HSRE MOKENA LLC

HTW, LLC

IG CAPITAL LLC

IIT CHICAGO PORTFOLIO I LLC

IKEA PROPERTY INC

INTERNTL UNION OPERATING ENG LOCALS 150 150A 150B 150C

IPT I-55 DC LLC

IPT PINNACLE DC II LLC

IPT WINDHAM IC LLC

J. C. PENNEY COMPANY, INC.

JAMES CAMPBELL COMPANY, LLC

JANKO ASSET MANAGEMENT

JCC REALTY LLC

JEFFERSON & LARKIN LLC TR.12719 C/O R. E. HEIDNER

JEFFERSON JOLIET PLAZA

JEFFERSON VILLAGE, LLC

JESSUP, MICHAEL JAMI

JEWEL COMPANIES, INC. (ALBERTSONS)

JGMBG HOLDINGS LLC

JL MEYER PROPERTIES, LLC

JOLIET COMMONS PHASE I (INLAND)

JOLIET COMMONS PHASE II

JOLIET EXT LODGING ASSOC LLC

JOLIET HILLCREST, LLC

JOLIET INVESTMENT PARTNERS LLC

JOLIET/55 LODGING ASSOC.

JOLIET-80 LODGING PTR

JOYCE JOLIET PLAZA

JWP PARTNERS JOLIET LAND LLC

KARABEL, WILLIAM EDWARD

KASSULAT, RICHARD A. TR. 11047610

KC ROMEO DEVELOPMENT LLC

KENOSHA PW LLC c/o Crown Group

KENSINGTON CENTER PROPS LLC

KOHL'S DEPT. STORES, INC.

LA MASTUS T ASKOUNIS K TRUST

LA MASTUS, TERRY H

LAKEWOOD NURSING HOME

LAMBRECHT, PATRICIA

LARKIN VILLAGE LP

LAWLER, TIMOTHY

LCMC ASSOCIATES LLC

LGP REALTY HOLDINGS LP

LIBERTY ILLINOIS LP

LIBERTYVILLE BANK AND TRUST

LIFE STORAGE, LP

LIGHT, DANIEL LEAH RAE

LINOLNSHIRE COUNTRY CLUB

LOCKPORT 355 LLC

LPF 740 ROMEOVILLE, LLC

LUBIENSKI MARK B AND COLLEEN A

LUCKY DEVELOPMENT LLC

LUNDY PARTNERSHIP RL

MALLIKA PBJ LLC

MANNY, MARIE T 2010 TRUST

MAPLE PARK PLACE SHOPPING CNTR (INLAND)

MARATHON OIL CO.

MATTHEWS, MS. JAYNE

MAUSER CORP

MC GOWAN, MR. EDWARD T.

MEIJER STORES
METRO CHICAGO IND ACQSTN CORP
MIRANTE, JOSEPH
MLRP KOPPERUD PHASE II LLC
MMJA PROPERTY LLC
MOKENA COMMERCIAL
MOKENA MARKETPLACE (INLAND)
MOKENA PROPERTIES SIX LLC
MOKENA REAL ESTATE HOLDING CO
MONARCH OFFICE PROPERTIES LLC
MWD BOLINGBROOK LLC
NAPERVILLE RT. 59/95TH PLAZA
NEW MIDWEST RENTALS LLC
NORTHERN BUILDERS INC.
NORTHERN BUILDERS, INC.
OLD SECOND NATIONAL BANK
OYEDIJO DOTUN
PAC FINANCE 1, LLC
PACGWL LLC
PARKVIEW PLAZA PARTNERS LLC
PARKWAY BANK & TRUST TR 8619
PELLEGRINO, ORLANDO
PERINO, JOSEPH A
PEWAG REAL ESTATE INC.
PHEASANT LAKE ESTATES
PICSTAR EAT LLC
PINE MEADOWS APARTMENTS TR 9406
PLAINFIELD 59 LLC - LFI REAL ESTATE
PLAINFIELD INVESTMENTS LLC
PLAINFIELD PLAZA
PLAINFIELD PLAZA III
PLAINFIELD SQ DEV PRTNERS LLC
PLDAB, LLC
PRAIRIE CROSSING
PRG/555 INVESTORS, LLC
PROFESSIONAL RESOURCE DEV INC
ProLogis

ProLogis Development Serv

PROLOGIS ILLINOIS LLC

PROVENA HEALTH CARE

PROVENA PROPERIES INC

PS TINLEY LLC

PSS VENTURES LLC

PUBLIC STORAGE, INC.

QUADRANGLE DEVEELOPMENT CORP.

RDK VENTURES, LLC

REZIN FAMILY INVESTMENTS

RIVERWALK HOMES LLC

RMS PROPERTIES

ROUNDY'S SUPERMARKET

RR CRESTHILL LLC

RREEF AMERICA REIT II CORP

RYAN COMPANIES US, INC.

SCF RC FUNDING LLC

SCHEERER FMLY TR SCHEERER JOHN ANGELA

SENIOR STAR LIVING

SF PACIFIC PROPERTIES, LL

SHI II AMERCN HSE CEDARLAKE LLC

SHOREWOOD HORIZON LP

SHOREWOOD STATION LLC

SHURGARD IL PROPERTIES, INC. #8060

SMITH GAEL REV TRUST

SOUTHCREEK ENTERPRISES, LLC

SOUTHCREEK INDUSTRIAL LLC

SOUTHLAND DEVELOPMENT

SOVRAN ACQ LP

SPG GREEN GARDEN & CNTRY CLUB

SPIRIT MASTER FUNDING LLC

SS BOLINGBROOK LLC #502

SSG BOLINGBROOK LLC

SSGT 1302 MARQUETTE DR LLC

ST JAMES INDUSTRIAL

STALTERI, JAMES TR 21187

STANTON, PATRICK

STAR-WEST LOUIS JOLIET LLC

STARWOOD RETAIL PARTNERS - BOLINGBROOK PROMENADE

STATE BANK OF COUNTRYSIDE TRUST NO. 09-3

STEAK N SHAKE INC

STREIT KAREN

SWC 87TH & STONEY LLC

TARGET CORP. T-1403

TARGET CORP. T-2028

TARGET CORP. T-2035

TARGET CORPORATION - T-1881

TARGET CORPORATION T-0867

TARGET CORPORATION T-0894

TARGET STORE T-2293

TARGET STORE T-2521

TARGET T-2710

THE HOME DEPOT

THOMAS, MR. JAMES G.

THORNTONS, INC.

THORNWOOD HOUSE - UNIVERSITY PARK APARTMENTS

TINLEY HARLEM PLAZA

TOM KELLY'S CHOPHOUSE PUB LLC

TOMMY NEVIN'S RL EST NAPER LLC

TOWN SQUARE LLC

TOYS "R" US, INC.

TR 1000 DALTON LANE CORP.

TREAN MOKENA LLC

TREAN MOKENA PROMEADE LLC

TRIDENT HOLDINGS LLC

TWO RIVERS BOLINGBROOK LLC

TWO RIVERS PLAZA (INLAND)

ULTIMATE MACHINING

UNIVERSITY PARK APARTMENTS, LP

US BANK (Ryan)

US BANK NA

USAA REAL ESTATE COMPANY (AMAZON CHICAGO)

VACANT LAND CHERRY HILL H

VEREIT MT PLAINFIELD IL LLC

20

VETERANS PARKWAY INDUSTRIAL

**VICTORY ASSOC II LP**

VICTORY ASSOC LP TR 123135-08

**VIP MDG, L.L.C.**

VIP MOKENA CROSSINGS LLC

**VIP REMINGTON LAKES, LLC.**

VIP ROMEOVILLE II, LLC

**VIP ROMEOVILLE III LLC**

VIP ROMEOVILLE, LLC.

**VIP TINLEY PARK LLC**

WEDOFF, THOMAS LISA

**WENDYS OLD FASHIONED HAMBURGERS, INC.**

WENDYS/ARBYS GROUP

**WEST SUBURBAN BANK**

WESTERN A MIDWEST IL LLC

WESTERN C REIT PARK 355 LLC

WHITING CORP

WILLIAMS CHARLES E CYNTHIA

WINTRUST FINANCIAL CORP.

WOLSKI, MS. ELLEN

WONG HUBERT LVG TR

ZENITH HOLDINGS LTD

2023 IL App (3d) 210606

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-TX-251; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Donald E. Renner III, Allen Wall, and Scott E. Nemanich, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for intervenor-appellant. |
| **Attorneys for Appellee:** | Evan B. Karnes II and Everardo Martinez, of Karnes Law Chtrd., of Chicago, for appellees 110 Larkin, LLC, *et al.*<br><br>No brief filed for other appellee. |